763 F.2d 1532
 53 USLW 2604
 David ZBARAZ, M.D. and Allan G. Charles, M.D., individually
and on behalf of a class of all others similarly
situated, Plaintiffs-Appellees,
v.
Neil HARTIGAN, in his official capacity as Attorney General
of the State of Illinois, and Richard M. Daley, in his
official capacity as State's Attorney for Cook County,
Illinois, their agents and successors, and all others
similarly situated, Defendants-Appellants.
 Nos. 84-1958, 84-1959.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 19, 1985.
Decided May 20, 1985.
 
 Marc O. Beem, Miller Shakman Nathan & Hamilton, Chicago, Ill., for plaintiffs-appellees.
 Steven F. Molo, Asst. Atty. Gen., Chicago, Ill., for defendants-appellants.
 Before BAUER and COFFEY, Circuit Judges, and BROWN, Senior District Judge.*
 BAUER, Circuit Judge.
 
 
 1
 This appeal concerns the constitutionality of Illinois' Parental Notice Abortion Act of 1983 (the Act). The district court found that the twenty-four hour waiting period imposed by Section 4(a) of the Act was unconstitutional because it unduly burdened the minor's right to have an abortion in the absence of a compelling state interest. Zbaraz v. Hartigan, 584 F.Supp. 1452, 1458-59 (N.D.Ill.1984). The district court also found that the judicial procedures contained in Section 5 of the Act permitting waiver of notice to the minor's parents were unconstitutional because they failed to assure the expeditious and confidential disposition of the proceedings at the trial level and on appeal. 584 F.Supp. at 1460-62. The district court held that these provisions were not severable from the Act because without them the Act would have little "operative significance," and therefore declared the entire Act unconstitutional. Id. at 1464. Appellants appeal these holdings.
 
 
 2
 We affirm the district court's holding that the twenty-four hour waiting period imposed by Section 4(a) is unconstitutional. We vacate, however, the district court's holding that the provisions relating to the waiting period are not severable, and accordingly we sever those provisions from the Act. We also vacate the district court's holding that the judicial procedures permitting waiver of notification provided for under Section 5 are unconstitutional, but enjoin enforcement of the Act until the Illinois Supreme Court promulgates rules which assure the expeditious and confidential disposition of the waiver of notice proceedings at trial and on appeal.
 
 I. Statement of Facts
 
 3
 On November 2, 1983, the Illinois General Assembly enacted the Illinois Parental Notice of Abortion Act of 1983, P.A. 83-890, overriding the veto of Governor James Thompson. On January 26, 1984, plaintiffs filed a class action suit in federal court challenging the constitutionality of the Act. On that date the district court entered a temporary restraining order enjoining enforcement of the Act.
 
 
 4
 The district court subsequently certified both plaintiff and defendant classes. The plaintiff class consists of all licensed physicians presently performing or desiring to perform abortions for unemancipated minors and disabled persons in Illinois and all unemancipated minors capable of giving informed consent to an abortion or whose best interests would not be served by notice to both parents. The defendant class consists of all the State's Attorneys of the various counties in Illinois.
 
 
 5
 On May 4, 1984, the district court granted plaintiffs' motion for summary judgment, declaring the Act unconstitutional and permanently enjoining its enforcement. The district court found that the twenty-four hour waiting period imposed by the Act after a minor had notified both parents of her decision to have an abortion unconstitutionally burdened her right to have an abortion. The district court also found that the judicial alternative to notice provided by the Act was unconstitutional because it failed to assure that the proceedings would be conducted expeditiously and confidentially. The district court upheld the other provisions of the Act, but found that it could not sever the unconstitutional provisions without eviscerating the Act, and therefore declared the entire Act unconstitutional.
 
 
 6
 On June 30, 1984, the Illinois General Assembly amended the Act to provide that the waiver of notice proceedings "shall insure anonymity" and added a severability clause to the Act. P.A. 83-1128. These amendments were immediately enjoined. Defendants then filed this appeal, challenging the district court's holdings.
 
 II. The Twenty-Four Hour Waiting Period
 
 7
 In City of Akron v. Akron Center for Reproductive Health, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), the Supreme Court struck down an ordinance which imposed a twenty-four hour waiting period on women who had, pursuant to the ordinance, given written consent to obtain an abortion. 103 S.Ct. at 2503. The stated purpose underlying the waiting period was to allow a woman time to reflect upon her decision to have an abortion, thereby making a more "informed" decision. The Court found that this provision imposed a burden on women seeking to obtain an abortion and that the state had failed to demonstrate that the waiting period furthered any legitimate state interest. Id. at 2503. Therefore, the Court held that the provision was unconstitutional.
 
 
 8
 Although the ordinance struck down in Akron applied to both adults and minors, the Supreme Court has not specifically addressed the application of waiting periods only to minors or weighed the state's interest in promoting parental consultation with a minor who seeks to obtain an abortion against the burdens imposed on minors by a waiting period. The Akron court also stated that, in view of the unique status of children under the law, states have a "significant" interest in certain abortion regulations aimed at protecting children which is not present when the state seeks to regulate adults. Akron, 103 S.Ct. at 2491 n. 10 (citing Planned Parenthood of Central Mo. v. Danforth, 428 U.S. 52, 75, 96 S.Ct. 2831, 2844, 49 L.Ed.2d 788 (1976)). The holding in Akron, therefore, may not apply to minors. In view of the other case law in this area, however, including several cases from this circuit, it is apparent that the Supreme Court's prohibition of waiting periods in abortion statutes also extends to statutes which regulate only minors.
 
 
 9
 The constitutional rights of minors do not receive lesser protection than the rights of adults. Danforth, 428 U.S. at 74, 96 S.Ct. at 2843 (citations omitted); Charles v. Carey, 627 F.2d 772, 785 (7th Cir.1980). Similarly, the burdens imposed by state regulation of abortion are no different for minors than for adults. Bellotti v. Baird, 443 U.S. 622, 642, 99 S.Ct. 3035, 3047, 61 L.Ed.2d 797 (1979) (Bellotti II ); Indiana Planned Parenthood v. Pearson, 716 F.2d 1127, 1143 (7th Cir.1983); Wynn v. Carey, 599 F.2d 193, 196 n. 6 (7th Cir.1979). Rather, the difference between abortion statutes which regulate adults and those which regulate only minors is that the state may have a significant interest promoted by a statute which regulates minors, but would have no legitimate interest in applying that statute to adults. Akron, 103 S.Ct. at 2491 n. 10; Danforth, 428 U.S. at 75, 96 S.Ct. at 2844. For example, the state has a legitimate interest in promoting parental consultation with a minor who is seeking to obtain an abortion because of the minor's presumed inability to make important decisions in an informed, mature manner and the serious concerns implicated by a decision to have an abortion. Bellotti II, 443 U.S. at 634, 99 S.Ct. at 3043. The state has no legitimate interest, however, in promoting such consultation when the woman seeking an abortion is mature. Akron, 103 S.Ct. at 2497.
 
 
 10
 The state clearly has a significant interest in promoting parental consultation with a minor before her decision to have an abortion. Akron, 103 S.Ct. at 2491 n. 10; H.L. v. Matheson, 450 U.S. 398, 409-10, 101 S.Ct. 1164, 1171-72, 67 L.Ed.2d 388 (1981) (quoting Bellotti II, 443 U.S. at 640-41, 99 S.Ct. at 3046-47); Pearson, 716 F.2d at 1143. On the other hand, a mature minor or an immature minor in whose best interest it is to have an abortion has a constitutional right to have an abortion without notifying her parents. Matheson, 450 U.S. at 420, 101 S.Ct. at 1177 (Powell, J., concurring); Bellotti II, 443 U.S. at 647, 99 S.Ct. at 3050. Accord Akron, 103 S.Ct. at 2497-98 (parental consent statute); Planned Parenthood, Kansas City, Mo., Inc. v. Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 2525, 76 L.Ed.2d 733 (1983) (parental consent statute). In balancing these two rights, the Supreme Court upheld a parental notification statute in Matheson because that statute promoted the state's interest in parental consultation with a minor without unduly burdening a minor's right to have an abortion. Matheson, 450 U.S. at 413, 101 S.Ct. at 1173. Accord Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983) (upholding parental consent statute).
 
 
 11
 Neither the parental notification statute which the Court upheld in Matheson nor the parental consent statute which the Court upheld in Ashcroft requires a waiting period after notification or consent is effected. It is also worth noting that in Ashcroft the state did not appeal the Eighth Circuit's holding that the Missouri statute's forty-eight hour waiting period was unconstitutional. Ashcroft, 655 F.2d 848, 866 (8th Cir.1981), aff'd in part, rev'd in part on other grounds, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983) (waiting period severed from statute). We have been able to find only one case in which a waiting period has been upheld, Wolfe v. Schroering, 541 F.2d 523, 526 (6th Cir.1976), and that holding was subsequently overruled by the Sixth Circuit in City of Akron v. Akron Center for Reproductive Health, Inc., 651 F.2d 1198, 1208 (6th Cir.1981), aff'd in part, rev'd in part on other grounds, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983). Moreover, a plethora of cases have struck down provisions imposing a waiting period. See, e.g., Akron, 103 S.Ct. at 2503 (parental consent statute); American College of Obstetricians v. Thornburgh, 737 F.2d 283, 293 (3d Cir.1984) (parental consent and informed consent statute); Indiana Planned Parenthood v. Pearson, 716 F.2d 1127, 1143 (7th Cir.1983) (parental notification statute); Women's Services P.C. v. Thone, 690 F.2d 667, 668 (8th Cir.1982) vacated for further consideration in light of Akron, sub. nom. Kerrey v. Women's Services P.C., 462 U.S. 1126, 103 S.Ct. 3102, 77 L.Ed.2d 1358 (1983) (parental notification statute); Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1014-16 (1st Cir.1981) (parental consent and informed consent statute); Charles v. Carey, 627 F.2d 772, 786 (7th Cir.1980) (informed consent statute); Wynn v. Carey, 599 F.2d 193, 196 (7th Cir.1979) (parental consent statute); Women's Medical Center of Providence, Inc. v. Roberts, 530 F.Supp. 1136, 1137, 1147 (D.R.I.1982) (informed consent statute); Leigh v. Olson, 497 F.Supp. 1340, 1348 (D.N.D.1980) (parental notification and informed consent statute); Margaret S. v. Edwards, 488 F.Supp. 181, 212 (E.D.La.1980) (parental notification and informed consent statute); Women's Community Health Center v. Cohen, 477 F.Supp. 542, 551 (D.Me.1979) (informed consent statute).
 
 
 12
 These cases hold that a waiting period places a direct and substantial burden on women who seek to obtain an abortion. This burden is the same for minors as for adults, Bellotti II, 443 U.S. at 642, 99 S.Ct. at 3047; Charles v. Carey, 627 F.2d at 785, and therefore "the same objections to the waiting periods for adults listed in City of Akron apply to waiting periods for minors." Pearson, 716 F.2d at 1143. The burden imposed by a waiting period has been reiterated with little variation in these cases. The District Court of Rhode Island cogently discussed several factors which it considered part of this burden in Women's Medical Center of Providence, Inc. v. Roberts, supra, stating
 
 
 13
 Although a mere twenty-four hour delay by itself may not increase the risk of an abortion to a statistically significant degree, the record in this litigation shows that the mandatory wait may combine with other scheduling factors such as doctor availability, work commitments, or sick leave availability, to increase the actual waiting period to a week or more.... [I]t is uncontested that delays of a week or more do indeed increase the risk of abortion to a statistically significant degree.... Furthermore, a delay of even twenty-four hours may push a woman into the second trimester, thus requiring that the operation be performed in a hospital, and significantly increasing the procedure's cost, inconvenience, and, of course, risk.
 
 530 F.Supp. at 1146.[1]
 
 14
 Courts have also noted that difficulties in scheduling may be complicated by the distance which a woman may have to travel in order to obtain an abortion. An extreme example of this was before the District Court of North Dakota in Leigh v. Olson, supra, in which the district court found that only one doctor in the entire state performed abortions and that women in certain parts of the state would have to drive some 400 miles in order to obtain an abortion. 497 F.Supp. at 1347. Finally, the cases cited above have noted that a waiting period may result in additional mental anguish for a significant number of women seeking abortions. See, e.g., Leigh v. Olson, 497 F.Supp. at 1347 n. 8 and accompanying text.
 
 
 15
 Because a waiting period places a direct and substantial burden on women who seek to obtain an abortion, the state is required to prove that the regulation is "narrowly drawn to further a compelling interest." Charles v. Carey, 627 F.2d at 785. Accord Akron, 103 S.Ct. at 2495; Doe v. Bolton, 410 U.S. 179, 195, 93 S.Ct. 739, 749, 35 L.Ed.2d 201 (1974). Although it is not disputed that the state's interest in promoting parental consultation with a minor who seeks to obtain an abortion is significant, this Circuit has held that the state's interest is insufficient to impose a waiting period in light of the burden it places on the minor's right to obtain an abortion. Pearson, 716 F.2d at 1143. Accord Wynn v. Carey, 599 F.2d at 196. Mere parental notification, however, promotes the state's interest in parental consultation and is not unduly burdensome if it provides an exception to parental notification for mature minors and immature minors whose best interests require an abortion. Akron, 103 S.Ct. at 2497-98; Ashcroft, 103 S.Ct. at 2525; Pearson, 716 F.2d at 1132. Moreover, in Pearson we noted that "[n]otification itself in most cases should lead to parental consultation without the state's additional help because minors are particularly susceptible to parental wishes." 716 F.2d at 1132. Thus, it appears that a mandatory waiting period is unconstitutional for two reasons; first, it imposes a far greater burden on a minor's rights than a parental notification requirement which provides an exception to notification for mature minors and immature minors whose best interests require an abortion, and second, it does not significantly further the state's interest in promoting parental consultation when combined with a notification requirement, which itself promotes that interest.
 
 
 16
 In view of the case law, the waiting requirement imposed by Section 4 of Illinois' 1983 Parental Notice Abortion Act, standing alone, is unconstitutional. The state argues, however, that the waiting period is not mandatory, and hence, not unconstitutional, because of the provisions of Section 7 of the Act. Section 7 provides that the twenty-four hour waiting requirement imposed by Section 4 does not apply when the minor's parents have been notified of the minor's decision to obtain an abortion and both parents either accompany the minor to the place where the abortion is to be performed or "submit signed notarized statements indicating that they have been notified," presumably to the doctor who is to perform the abortion. The question before this court, therefore, is whether the provisions of Section 7 remove the constitutional infirmity from the waiting period imposed by Section 4.
 
 
 17
 As noted above, one reason that a waiting period is unconstitutional is because of the undue burden which it places on a woman's right to obtain an abortion. A proper initial question might then be whether the provisions of Section 7 alleviate in any way the burden imposed by Section 4. In order to avoid the strictures of Section 4, Section 7 requires a minor to coordinate the activities of both her parents to accompany her to an abortion clinic or to appear before a notary to sign a statement. These requirements, rather than alleviating the burden imposed by a waiting period, seem to increase it. The problems of scheduling, travel, and expense inherent in a waiting period will increase threefold if a minor's parents are required to accompany her to the abortion clinic or to make arrangements to appear before a notary. Thus, the requirements of Section 7 are more likely to result in greater delay in obtaining an abortion after a minor has notified her parents than the twenty-four hour wait imposed by Section 4. Therefore, Section 7 does not alleviate the burden imposed by Section 4, but merely offers an alternative, and apparently greater, burden to that which the case law holds unconstitutional.
 
 
 18
 Moreover, Section 7 does not seem to cure the defects of a waiting period which this Circuit addressed in Pearson. In Pearson, we found that the Indiana statute's waiting period was unconstitutionally "arbitrary and inflexible because it applies both to minors whose parents have been notified within the time period and object and those whose parents have already expressed approval for the abortion." 716 F.2d at 1143. This same objection applies to Illinois' statute. Section 7 does not provide an exception to the waiting period for a minor whose parents approve of her decision to have an abortion; it merely provides her with an opportunity to obtain an abortion within twenty-four hours after notifying her parent's only if she complies with further requirements. As discussed above, it is unlikely that these requirements can be fulfilled within the twenty-four waiting period. Regardless, the imposition of further burdensome requirements once notice has been effected violates the plain command of Pearson that "the state cannot require that an abortion be delayed once notification has been effected upon a minor's parents." 716 F.2d at 1143. Accord Akron, 103 S.Ct. at 2503. Thus, even if a minor could fulfill the requirements of Section 7 after only a short delay, that section is unconstitutional.
 
 
 19
 In examining Section 7's effect on the second constitutional infirmity of a waiting period, whether it sufficiently furthers the state's interest in parental consultation in view of the parental notice requirement, it is evident that the provisions of Section 7 do not make a waiting period more efficacious in promoting parental consultation. The only apparent effect of Section 7 is to make it more difficult for a minor to obtain an abortion once she has notified her parents of her decision if she does not wish to submit to the burden of a twenty-four hour waiting period. Thus, it does not appear that Section 7 promotes any state interest other than perhaps the state's interest in enforcing an unconstitutional waiting period under the guise that its statute provides "exceptions" to the waiting requirement.
 
 
 20
 In sum, Section 7 does not alleviate the burden on a minor's right to have an abortion and it does not further the state's interest in promoting parental consultation. Therefore, Section 7 does not remedy the constitutional infirmity of the waiting period imposed by Section 4.
 
 
 21
 III. The Judicial Alternative to Parental Notification
 
 
 22
 As the Supreme Court stated in City of Akron v. Akron Center for Reproductive Health, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), the relevant legal standards governing the adequacy of judicial alternatives to parental consent are not in dispute. 103 S.Ct. at 2497. A state's interest in protecting immature minors is sufficient to require parental consent, but "the State must provide an alternative procedure whereby a pregnant minor may demonstrate that she is sufficiently mature to make the abortion decision herself or that, despite her immaturity, an abortion would be in her best interest." Akron, 103 S.Ct. at 2497-98. See Planned Parenthood of Kansas City, Mo., Inc. v. Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 2525, 76 L.Ed.2d 733 (1983); Bellotti v. Baird, 443 U.S. 622, 643-44, 99 S.Ct. 3035, 3048-49, 61 L.Ed.2d 797 (1979) (Bellotti II ). This standard also governs provisions requiring parental notification. Bellotti II, 443 U.S. at 651, 99 S.Ct. at 3052; Pearson, 716 F.2d at 1132. Illinois' Parental Notice Abortion Act does provide a judicial procedure for waiver of the parental notification requirement. The issue before this court is therefore whether the Illinois statute's judicial alternative is constitutionally sufficient. See Ashcroft, 103 S.Ct. at 2525.
 
 
 23
 In Bellotti II, the Supreme Court held that the judicial alternative to parental notification "must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonyimity and sufficient expedition to provide an effective opportunity for an abortion to be performed." 443 U.S. at 644, 99 S.Ct. at 3048. See Ashcroft, 103 S.Ct. at 2525 n. 16. Appellees do not contest the sufficiency of the procedures established in Section 5 for making the determination that a minor is mature or that, if the court finds that she is immature, an abortion is nonetheless in her best interests. Section 5(e) provides that the court "shall issue written and specific factual findings and legal conclusions supporting its decision." It is also uncontested that Section 5 provides that the hearing shall be held and a decision rendered with sufficient expediency. Section 5(c) provides that "in no case shall the court fail to rule within 48 hours of the time of application." Rather, the dispute is whether Sections 5(f) and (g) sufficiently provide for an expedited appeal of the court's decision.
 
 
 24
 Section 5(f) provides that "[a]n expedited confidential appeal shall be available as the Supreme Court provides by rule...." Section 5(g) further states that "[t]he Supreme Court is respectfully requested to promulgate any rules and regulations necessary to ensure that proceedings under this Act are handled in an expeditious and confidential manner." Moreover, the state contends that expedited appeals are currently available to minors pursuant to Illinois Supreme Court Rules 303 and 311, and that therefore the judicial alternative to parental notification is adequate even if the Illinois Supreme Court feels "that additional rules are unnecessary at this time." Appellant's Br. at 25.
 
 
 25
 In Ashcroft, the United States Supreme Court upheld the Missouri parental consent statute's provision providing for expeditious appeals, which provided that
 
 
 26
 The notice of intent to appeal shall be given within twenty-four hours from the date of issuance of the order. The record on appeal shall be perfected within five days from the filing of notice to appeal. Because time may be of the essence regarding the performance of the abortion, the supreme court of this state shall, by court rule, provide for expedited appellate review of cases appealed under this section.
 
 
 27
 Mo.Rev.Stat. Sec. 188.028.2(6) (Supp.1982).
 
 
 28
 The Court held that "this section provides the framework for a constitutionally sufficient means of expediting judicial proceedings." 103 S.Ct. at 2525 n. 16. Although the state supreme court had not promulgated any rules assuring expediency at the time the case was heard because the district court had enjoined enforcement of the statute immediately after it went into effect, the Court stated that it had "no reason to believe that Missouri will not expedite any appeal consistent with the mandate in our prior opinions." Id.
 
 
 29
 The Illinois statute does not provide any regulation of appellate procedure, such as the twenty-four hour and five day limitations imposed by the Missouri statute. The Illinois Constitution, however, prohibits the state legislature from making specific rules governing appellate procedure. These rules may only be enacted by the Illinois Supreme Court. See ILL. CONST. art. VI, Sec. 16. Thus, the issue is whether Section 5's general instructions to the Illinois Supreme Court to promulgate rules providing for the expeditious and confidential appeal of decisions under the Act provide "the framework for a constitutionally sufficient means of expediting" the appeal.
 
 
 30
 The Court's language in Ashcroft that the Missouri statute's provisions were sufficient because it had "no reason to believe that Missouri will not expedite any appeal consistent with the mandate in [the Supreme Court's] prior opinions" indicates that the Court is willing to allow a state supreme court the opportunity to enact constitutional rules governing appeals before it will strike down the statute for failing to provide a judicial alternative to parental notification. Because of the Illinois legislature's constitutional inability to prescribe such rules, this approach is logical in this case. This approach also appears to be consistent with this Circuit's holding in Indiana Planned Parenthood v. Pearson, 716 F.2d 1127 (7th Cir.1983), which struck down an Indiana parental notification statute because, among other grounds, it did not "even mention appeals." 716 F.2d at 1135. The Pearson court stated that if the statute had "at least directed the Indiana Supreme Court to promulgate rules governing expedited appeals, we would be satisfied." 716 F.2d at 1136.
 
 
 31
 On the other hand, the Third Circuit, in addressing the constitutionality of the Pennsylvania Abortion Control Act, stated that "in light of the ... Act's provision requiring the Supreme Court of Pennsylvania to promulgate rules assuring confidentiality and promptness of disposition, we cannot hold that the provision is constitutional." American College of Obstetricians v. Thornburgh, 737 F.2d 283, 297 (3d Cir.1984). Citing Ashcroft, the Third Circuit stated that "[t]o pass constitutional muster, the alternative judicial procedure must be an established and practical avenue and may not rely solely on generally stated principles of availability, confidentiality, and form." 737 F.2d at 297. Because the Pennsylvania Supreme Court had not yet enacted "any rules to fill the gaps of the ... statute," the Third Circuit did not invalidate the provision, but enjoined its enforcement until the state court promulgated such rules. Id.
 
 
 32
 The Third Circuit's concern that it could not rule on the constitutionality of the provision because it was, in essence, incomplete seems to be echoed in this Circuit's decision in Pearson. The Pearson court's concern with the Indiana statute was that in the absence of any rules governing appeal, "the only assurance we have that Indiana courts will expedite appeals is the state's assertion that they will." 716 F.2d at 1136-37. Similarly, the Illinois statute provides no rules for the filing or perfection of appeals, as did the Missouri statute addressed in Ashcroft, but more closely resembles the provision which the Third Circuit considered in Thornburgh.
 
 
 33
 Despite the complete absence of rules governing appeals in the Illinois statute, it appears that under Ashcroft the constitutionality of the judicial alternative provided for under Section 5 should not be determined until the Illinois Supreme Court has had an opportunity to promulgate rules governing appeals. It is difficult to see how the absence of such rules provides the framework for a constitutionally sufficient means of expediting the appeal which would require upholding the provision without any further action by the Illinois Supreme Court. It is also difficult to see how a mere request for such rules provides the necessary framework. Rather, the provision is incomplete until the Illinois Supreme Court has promulgated rules providing for an expedited appeal. Because time is of the essence in an abortion decision, H.L. v. Matheson, 450 U.S. 398, 412, 101 S.Ct. 1164, 1172, 67 L.Ed.2d 388 (1981), the absence of such rules is a fundamental defect in Section 5 and the statute should therefore be enjoined, as was done by the Third Circuit in Thornburgh, until such rules are enacted and the Act can be reviewed in its entirety. As a practical matter, enjoining enforcement of the Act will prevent the statute's application to minors before adequate appellate recourse is available.
 
 
 34
 The state contends that the Act's failure to provide rules governing appeal is irrelevant because the opportunity for an expedited appeal already exists under Illinois Supreme Court Rules 303 and 311. Rules 303(a)(4) provides that "[w]ithin five days after the filing of the notice of appeal ... the clerk of the circuit court shall transmit to the clerk of the court to which the appeal is being taken a copy of the notice of appeal." The notice of appeal is then entered on the docket of the reviewing court upon receipt by that court's clerk pursuant to Rule 303(f). Rule 311 provides that "the parties may agree to have their case placed on an accelerated docket ... and may provide for submission of an agreed statement of facts in lieu of a record, and memoranda in lieu of formal briefs." The reviewing court "may then enter an order setting forth an expedited schedule for the disposition of the appeal." 110A Ill.Rev.Stats. Sec. 311 (1982).
 
 
 35
 The Illinois Supreme Court Rules which are already in effect differ in several respects from the provisions of the Missouri statute which the United States Supreme Court approved in Ashcroft. The Missouri statute stated that the record shall be completed and the appeal perfected within five days of filing the notice of appeal. Ashcroft, 103 S.Ct. at 2525 n. 16. Rule 303 merely provides that the notice of appeal shall be transferred to the reviewing court and docketed within that same time. The minor seeking an abortion must then place the case on an accelerated docket, and presumably petition the reviewing court for an expedited hearing pursuant to Rule 311. Moreover, the Missouri statute expressly commands the Missouri Supreme Court to provide for expedited appeals. Rule 311, however, does not require an expedited hearing, but merely gives the reviewing court discretion to grant such a hearing. The Pearson court considered such discretion as a factor in determining that the Indiana Rules of Appellate Procedure did not assure an expeditious hearing on appeal. 716 F.2d at 1136.
 
 
 36
 The Illinois Supreme Court Rules do not require that the appeal be heard as quickly as under the Missouri statute upheld in Ashcroft. This appears to be a crucial factor since time is of the essence. Moreover, the request for rules ensuring the expeditious disposition of appeals in Section 5(g) indicates that the legislature did not intend for the existing Illinois Supreme Court Rules to suffice for appeals under the Act. Contrary to appellant's assertions, Section 5(g) indicates that the legislature did not believe that the existing rules are constitutionally sufficient. Further, the discretionary nature of Rule 311 does not assure that the appeal will be heard expeditiously. Although the Illinois Supreme Court Rules unquestionably give a minor seeking an abortion the opportunity to have an expeditious hearing, the United States Supreme Court's holdings require that the rules governing appeals assure that such a hearing will occur. Ashcroft, 103 S.Ct. at 2525 n. 16; Bellotti II, 443 U.S. at 644, 99 S.Ct. at 3048. The existing Illinois Supreme Court Rules do not meet this standard.
 
 
 37
 The district court also ruled that the Illinois parental notification statute was unconstitutional because it failed to assure the anonymity of the minor at the waiver of notice hearing or on appeal. Before addressing this issue, however, both parties contest which language in Section 5(c) is properly before this court for review. Appellees contend that review of only the language of the section as it existed at the time suit was filed is proper. At the time suit was filed, Section 5(c) required only that the waiver proceeding "shall be confidential." Subsequently, the Illinois legislature amended Section 5(c) to add the requirement that the waiver proceedings shall be conducted to "ensure the anonymity of the minor." In view of the Supreme Court's seemingly interchangeable use of the terms "confidentiality" and "anonymity," which is discussed below, the difference between the section as enacted and as amended does not seem significant for the purposes of our review. Nonetheless, review of a statute as amended, when the amendment occurred after an injunction was entered prohibiting enforcement of the statute, was held proper in Bionic Auto Parts and Sales, Inc. v. Fahner, 721 F.2d 1072, 1076-77 (7th Cir.1983). Appellees cite Charles v. Daley, 749 F.2d 452 (7th Cir.1984), for the proposition that review must be limited to the language of Section 5(c) at the time suit was filed. In Charles v. Daley, however, the district court did consider amendments to provisions enacted after the statute was enjoined, 749 F.2d at 455, but refused to consider even later amendments which were the subject of a separate lawsuit. Id. Thus, it appears that consideration of Section 5(c) as amended is proper.
 
 
 38
 The proceedings at which a minor may prove her maturity or that, if immature, an abortion is in her best interests "must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity...." Bellotti II, 443 U.S. at 644, 99 S.Ct. at 3048. See Ashcroft, 103 S.Ct. at 2525 n. 16. This court has stated that confidentiality during and after this proceeding is essential to ensure that a minor will not be deterred from exercising her right to a hearing because of fear that her parents may be notified. Pearson, 716 F.2d at 1141. Accord Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876-877, 51 L.Ed.2d 64 (1977); Leigh v. Olson, 497 F.Supp. at 1349; Margaret S. v. Edwards, 488 F.Supp. at 204. This issue has most often arisen in the context of statutes which require parental notification in every case, regardless of the minor's maturity or whether an abortion would be in her best interests. See, e.g., Bellotti II, 443 U.S. at 651, 99 S.Ct. at 3052; Danforth, 428 U.S. at 81, 96 S.Ct. at 2846; Pearson, 716 F.2d at 1141. The issue in this case, whether the statute's provisions specifically provide for, and thus assure, anonymity during a waiver of notice hearing, has received little attention.
 
 
 39
 The Supreme Court addressed this issue directly in Ashcroft, but without elaboration. The Missouri statute before the Court in Ashcroft provided that the minor may use her initials on the petition requesting waiver of consent. The Court held that this provision was sufficient to assure confidentiality, thus meeting the standard enunciated in Bellotti II. Ashcroft, 103 S.Ct. at 2525 n. 16. The Court appeared to use the terms "anonymity" and "confidentiality" interchangeably. Id.
 
 
 40
 Similarly, in Bellotti II the Massachusetts Supreme Court, upon certification of the issue from the district court, approved of the provisions of the Massachusetts statute regarding confidentiality, stating that "[t]he proceeding need not be brought in the minor's name, and steps may be taken, by impoundment or otherwise, to preserve confidentiality as to the minor and her parents." Baird v. Attorney General, 371 Mass. 741, 757-58, 360 N.E.2d 288, 298 (1977). After citing to this language upon review, the United States Supreme Court stated that these safeguards "avoid much of what was objectionable in the statute successfully challenged in Danforth," Bellotti II, 443 U.S. at 645, 99 S.Ct. at 3049, but the Court nonetheless struck down the Massachusetts statute because it required parental notification in every case. Id. at 651, 99 S.Ct. at 3052. Although the Massachusetts Supreme Court's assurance that the proceeding would be confidential was challenged on appeal, no evidence was presented as to the operation of the proceedings because the statute was enjoined prior to enforcement, and therefore the Court assumed that the Massachusetts Supreme Court's judgment was correct. Id. at 645 n. 25, 99 S.Ct. at 3049 n. 25.
 
 
 41
 The Third Circuit applied the Supreme Court's holdings in Ashcroft and Bellotti II to a provision in Pennsylvania's parental consent statute which required the state supreme court "to promulgate rules assuring confidentiality." American College of Obstetricians v. Thornburgh, 737 F.2d 283, 297 (3d Cir.1984). The Third Circuit's criticism of the Pennsylvania statute's lack of specificity in providing for the expeditious disposition of the waiver of notification hearing was also directed at the statute's failure to enact specific rules assuring confidentiality. As stated above, the Third Circuit enjoined enforcement of the statute until the state supreme court enacted rules "to fill in the gaps" of the statute because the mere command to promulgate rules fell short of the "detailed provisions assuring confidentiality" contained in the Missouri statute upheld in Ashcroft. Thornburgh, 737 F.2d at 297.
 
 
 42
 In addressing Illinois' parental notification statute, the district court did not consider the amended version of Section 5(c), but found the difference between "confidentiality" and "anonymity" to be "somewhat fine." 584 F.Supp. at 1461. Rather than focusing on this semantic distinction, the district court held that the Act did not assure a minor's anonymity because of the "merely precatory language requesting the Illinois Supreme Court to provide rules relating thereto." Id. at 1461-62. Despite appellee's contentions that confidentiality is not the equivalent of anonymity, this reasoning appears to be proper in view of the interchangeable use of the two terms in the cases discussed above. The real focus of the issue, then, is whether the Illinois statute assures a minor's anonymity during the course of the waiver proceedings with sufficient specificity.
 
 
 43
 Like the Pennsylvania statute considered in Thornburgh, the Illinois statute does not set forth specific rules to assure confidentiality. Section 5(c), as amended, states that the waiver of parental notification proceedings "shall be confidential and shall ensure the anonymity of the minor or incompetent." (amended portion italicized). Section 5(f) provides that "[a]n expedited confidential appeal shall be available, as the Supreme Court provides by rule...." Finally, Section 5(g) requests the Illinois Supreme Court to promulgate any rules necessary to ensure that proceedings under the Act are confidential.
 
 
 44
 Unlike the statute upheld by the Supreme Court in Ashcroft, the Illinois statute does not make any specific provisions to assure the minor's anonymity at the waiver hearing. Further, the statute does not address particular problems concerning anonymity which exist not only during the course of the proceedings, but afterwords because of the availability of court documents and files, which are generally available to the public. See, e.g., Whalen v. Roe, 429 U.S. at 599-600, 97 S.Ct. at 876-877. Thus, the Illinois statute appears to fall short of the standard set forth in Ashcroft and Bellotti II which requires the statute to assure confidentiality. As stated above, however, the Illinois legislature is prohibited by the state constitution from prescribing appellate procedure, and its power is therefore limited to Section 5(g)'s instruction to the Illinois Supreme Court to promulgate rules regarding appellate procedure. Further, although the statute merely requests the Illinois Supreme Court to promulgate rules assuring that the initial waiver proceeding will be confidential, the United States Supreme Court and the Third Circuit have both expressed a willingness to allow the state supreme court to promulgate constitutional rules before striking down the statute. Ashcroft, 103 S.Ct. at 2525 n. 16; Thornburgh, 737 F.2d at 297. Therefore, as in Thornburgh, the proper course of action would appear to be to enjoin enforcement of the statute until the Illinois Supreme Court promulgates rules assuring confidentiality. This would comport with the Illinois legislature's expressed intention that such rules be promulgated and would allow a complete review of the statute to determine its constitutionality.
 
 
 45
 IV. The "Other Considerations" Discussed by the District Court
 
 
 46
 At the end of his opinion the trial judge addressed several issues under the heading "Other Considerations." The trial judge stated that these issues, "though not raised explicitly by the parties, merit discussion ...." 584 F.Supp. at 1465-66. He then discussed what he viewed as the particular problems of the Illinois statute's provisions which impose criminal liability for recklessly violating the Act, provide for punitive damages in "an appropriate" civil suit brought for violation of the Act, and fail to provide for constructive notice should a minor be unable to notify her parents or someone standing in loco parentis. These issues were not litigated by the parties and the district court's discourse regarding these issues did not reach any holdings of law. In short, these issues were not part of the district court's decision.
 
 
 47
 It is well-settled that a ground for reversal cannot be presented for the first time on appeal. International Travelers Cheque Co. v. Bankamerica Corp., 660 F.2d 215, 225 (7th Cir.1981); Textile Banking Co. v. Rentschler, 657 F.2d 844, 853 (7th Cir.1981); Stern v. United States Gypsum Co., 547 F.2d 1329, 1333-34 (7th Cir.), cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Narrow exceptions to this rule exist when a jurisdictional question is raised or in "exceptional circumstances where justice demands more flexibility." Id. This rule applies where the issue was not raised by the parties below in the pleadings or in argument. United States v. Miroff, 353 F.2d 481, 483-84 (7th Cir.1965); Beckman Instruments, Inc. v. Coleman Instruments, Inc., 338 F.2d 573, 576-77 (7th Cir.1964). Even if the issue is contained in a pleading, the rule may apply if the issue was not argued at trial. King v. Stevenson, 445 F.2d 565, 570-71 (7th Cir.1971).
 
 
 48
 In the case at bar the record indicates that the "Other Considerations" discussed by the district court were not argued at trial and were not the basis of the district court's decision declaring the Illinois statute unconstitutional. Moreover, the district court did not make any holding regarding these issues, but merely stated that it was troubled by problems which might arise under the provisions in question. In fact, appellees admit that in addressing these issues the district court merely "expressed its opinion." Appellee's Br. at 4. Under these circumstances, the general rule stated above applies. The issue is then whether any exceptional circumstances exist "where justice demands more flexibility." We have been unable to find any cases where such circumstances exist. In view of this fact it appears that this exception truly is narrow. Further, the circumstances of this case do not appear to demand more flexibility. Therefore, the general rule should be applied in this case, and we will not address any of the issues not argued at trial.
 
 V. Severability
 
 49
 In Immigration and Naturalization Service v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), the Supreme Court stated that unconstitutional provisions in a statute shall be severed if it appears that the legislature would have enacted the constitutional provisions of the statute independently of those provisions. 103 S.Ct. at 2774 (citing Buckley v. Valeo, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976)). Illinois law contains a general severability provision which applies to any legislation promulgated after its effective date. 1 Ill.Rev.Stat. Sec. 1032 (1981). This provision applies to any provisions which can be given effect without the invalid provisions. Further, the Illinois legislature amended the Parental Notice Abortion Act to include a similar severability clause. P.A. 83-1128, Sec. 8.1 (June 30, 1984). It thus appears that the Illinois legislature intended the constitutional provisions of the Act to go into effect without the unconstitutional provisions.
 
 
 50
 Similarly, severance is improper if the unconstitutional provision is "an integral part of the statutory enactment viewed in its entirety." Scheinberg v. Smith, 659 F.2d 476, 481 (5th Cir.1981). It appears that the provisions of the Act relating to the twenty-four hour waiting period may be severed without affecting the essential purposes of the Act. As discussed above, this provision does not appear to significantly further the state's interest in promoting parental consultation. Severance would require eliminating the words "at least 24 hours" from the provision of Section 4(a) which currently states
 
 
 51
 "No person shall perform an abortion upon an unemancipated minor or upon an incompetent unless he or his agent has given at least 24 hours actual notice to both parents ...." (severable portion italicized.)
 
 
 52
 This omission would not effect the notice requirement, which promotes parental consultation. Severance would also require eliminating paragraph (a) of Section 7. Paragraph (a) contains the two "exceptions" to the twenty-four hour waiting period. Because it relates solely to the waiting period, its omission would not affect any other provisions of the Act. Thus, it appears that these omissions would remove the constitutional infirmity of the statute without hindering the state's goal of promoting parental consultation through the Act. Severance is therefore proper.
 
 VI. Conclusion
 
 53
 The twenty-four hour waiting period imposed by Section 4(a) is unconstitutional, but may be severed from the Act, thereby removing the constitutional infirmity of that provision from the statute without affecting the essential purpose of the Act. We therefore sever the Act's provisions relating to the waiting period. The resulting severance will leave the affected sections of the statute to read as follows:
 
 
 54
 Section 4. Notice required. No person shall perform an abortion upon an unemancipated minor or upon an incompetent unless he or his agent has given actual notice to both parents ....
 
 
 55
 * * *
 
 
 56
 * * *
 
 
 57
 Section 7. Other exceptions. (a) [Eliminated in its entirety.]
 
 
 58
 (b) Notwithstanding any other provision ....
 
 
 59
 We also vacate the district court's holding that the Act is unconstitutional. Enforcement of the statute is enjoined, however, until the Illinois Supreme Court enacts rules assuring the expeditious and confidential disposition of the judicial hearings which allow a mature minor or an immature minor whose best interests require an abortion to forego the state's notice requirement. We remand the case to the district court for a determination of the constitutionality of the waiver of notice proceedings when such rules are enacted.
 
 
 60
 COFFEY, Circuit Judge, dissenting.
 
 
 61
 The majority declares that section 4(a) of the Illinois Parental Notice of Abortion Act of 1983 ("Act"), requiring a twenty-four hour waiting period following parental notification of a minor, unemancipated, unmarried, immature, female child's decision to have an abortion, is unconstitutional. I dissent because the majority's holding not only fails to protect the minor unemancipated child from making an uninformed, immature abortion decision but also fails to protect the constitutional right of parents to direct, supervise, and properly control the rearing of their minor children. In Illinois, as well as all other states within the Union, parents are legally responsible for the health, maintenance, support, and well-being of their minor children because such children are presumed immature and incapable of providing for themselves or making reasoned, sound judgments. An integral part of this child-rearing responsibility is the parents' right, as recognized in judicial interpretations of the Constitution, to direct the upbringing of their children. The twenty-four hour waiting period allows parents to exercise their constitutional right and participate in their minor daughter's important abortion decision, offering valuable guidance, counseling, and reasoning that will aid the child in making a mature, informed decision of whether or not to abort her pregnancy. The majority severs the twenty-four hour waiting period from the Act but enjoins enforcement of the Act until the Illinois Supreme Court promulgates rules of confidentiality and expedited appellate review in the event the minor child's application to waive parental notification is denied by the Illinois state court. I, likewise, dissent because section 5 of the Act provides the framework necessary for the expedited and confidential judicial determination of a minor unemancipated child's application to waive parental notification.
 
 
 62
 * The record reveals that on November 2, 1983, the Illinois General Assembly passed the Parental Notice of Abortion Act with the express intent that the Act become effective on January 31, 1984. On January 26, 1984, just five days before the Act was to become effective, the plaintiff class filed a complaint in the District Court for the Northern District of Illinois, requesting that a temporary restraining order be issued to enjoin the State of Illinois from enforcing the Act.[1] The complaint alleged, inter alia, that the twenty-four hour waiting period of section 4(a) and the judicial alternative to parental notification of section 5 were unconstitutional. The district court granted the temporary restraining order, preventing enforcement of the Act for a period of ten days, and on January 30, 1984, the parties agreed to extend the temporary restraining order pending resolution of the constitutional questions.
 
 The Act provides, in relevant part, that:
 
 63
 "Section 4. Notice required. (a) No person shall perform an abortion upon an unemancipated minor or upon an incompetent unless he or his agent has given at least 24 hours actual notice to both parents or to the legal guardian of the minor pregnant woman or incompetent of his intention to perform the abortion or unless he or his agent has received a written statement or oral communication by another physician, hereinafter called the 'referring physician', certifying that the referring physician or his agent has given such notice.
 
 
 64
 * * *
 
 
 65
 * * *
 
 
 66
 Section 5. Procedure for waiver of notice. (a) The requirements and procedures under this Act are available to minors and incompetents whether or not they are residents of this State.
 
 
 67
 (b) The minor or incompetent may participate in proceedings in the court on her own behalf and the court shall appoint a guardian ad litem for her. The court shall advise her that she has a right to court appointed counsel and shall provide her with such counsel upon her request.
 
 
 68
 (c) Court proceedings under this Section shall be confidential and shall be given such precedence over other pending matters as is necessary to ensure that the court may reach a decision promptly, but in no case shall the court fail to rule within 48 hours of the time of application, provided that the 48 hour limitation may be extended at the request of the minor or incompetent.
 
 
 69
 (d) Notice shall be waived if the court finds either:
 
 
 70
 (i) That the minor or incompetent is mature and well-informed enough to make the abortion decision on her own, or
 
 
 71
 (ii) That notification of those to whom Section 4 of this Act requires that notice be given would not be in the best interests of the minor or incompetent.
 
 
 72
 (e) A court that conducts proceedings under this Section shall issue written and specific factual findings and legal conclusions supporting its decision and shall order that a confidential record of the evidence be maintained.
 
 
 73
 (f) An expedited confidential appeal shall be available, as the Supreme Court provides by rule, to any minor or incompetent to whom the circuit court denies a waiver of notice.
 
 
 74
 (g) The Supreme Court is respectively requested to promulgate any rules and regulations necessary to ensure that proceedings under this Act are handled in an expeditious and confidential manner.
 
 
 75
 (h) No filing fees shall be required of any minor or incompetent who avails herself of the procedures provided by this Section.
 
 
 76
 * * *
 
 
 77
 * * *
 
 
 78
 Section 7. Other exceptions. (a) When the parties to whom notice must be given pursuant to Section 4 of this Act have already been notified and those parties accompany the minor or incompetent to the place where the abortion is to be performed, or submit signed notarized statements indicating that they have been notified, the requirements of Section 4 of this Act shall not apply."
 
 
 79
 See Zbaraz v. Hartigan, 584 F.Supp. 1452, 1468-70 (N.D.Ill.1984); Ill.Rev.Stat. ch. 38, paragraphs 81-64, 81-65, 81-67 (Smith-Hurd Supp.1984-1985).[2] On May 4, 1984, the district court ruled that the twenty-four hour waiting period of section 4(a) directly contravened this court's holding in Indiana Planned Parenthood v. Pearson, 716 F.2d 1127 (7th Cir.1983) ("Pearson "), that "the state cannot require that an abortion be delayed once notification has been effected upon a minor's parents." 716 F.2d at 1143. The district court further ruled that the judicial alternative to parental notification set forth in section 5 of the Act did not satisfy the standards of Planned Parenthood, Kansas City, Mo. v. Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983) ("Ashcroft ") and Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion) ("Bellotti II "), because it (1) provided "no assurance that Illinois courts will expedite appeals"; and (2) did "not safeguard a minor's or incompetent's anonymity." Zbaraz v. Hartigan, 584 F.Supp. at 1461-62. The court reasoned that because the twenty-four hour waiting period of section 4(a) and the judicial alternative to parental notification of section 5 were "basic" to the Act, the provisions were not severable and the entire Act was unconstitutional. Id. at 1464.[3] Accordingly, the district court permanently enjoined the State of Illinois from enforcing any provisions of the Act. On appeal, the issues before this court are the constitutionality of section 4(a), the twenty-four hour waiting period for minor unemancipated children, and section 5, the judicial alternative to parental notification.
 
 II
 A. TWENTY-FOUR HOUR WAITING PERIOD
 
 80
 The Illinois Parental Notice of Abortion Act is intended to involve parents in the abortion decision of their unemancipated, unmarried, immature, female child who has not yet reached the majority age of eighteen and who continues to depend upon her parents for maintenance and support.[4] The Act does not attempt to regulate, much less interfere with, adult women of majority age who decide to terminate their pregnancy, nor does the Act apply to emancipated minors, those female children no longer dependent upon their parents for maintenance and support, who choose to undergo an abortion.[5] Instead, the Illinois Parental Notice of Abortion Act simply requires that when a minor, unemancipated, unmarried, female child, legally dependent upon her parents, becomes pregnant and decides to abort her pregnancy, the child's parents must be notified and afforded a twenty-four hour period to discuss the all-important abortion decision with their minor daughter. In view of the narrow application of the Act to this limited fact situation, my analysis focuses solely upon the interest of a minor unemancipated female child in making an informed, mature, well-reasoned abortion decision and the interest of parents in directing the upbringing of their minor unemancipated children.
 
 
 81
 A fundamental, bedrock principle of our society is that parents have a legal, moral, and social responsibility to provide for the health, maintenance, support, and well-being of their minor children. In the State of Illinois, any parent "who shall, without lawful excuse, desert or neglect or refuse to provide for the support or maintenance of his or her child or children under the age of 18 years, in need of such support or maintenance, shall be deemed guilty of a Class A misdemeanor ...." Ill.Rev.Stat. ch. 40, p 1101 (1983). The State requires parents to provide their minor children with the basic necessities in life and to assist the children in becoming mature adults capable of participating in, and contributing to, our society. It is widely known and accepted that minor children are incapable of making informed, mature, well-reasoned decisions during their formative years. For example, in the State of Illinois only a mature minor legally declared emancipated in an Illinois state court proceeding "shall have the right to enter into valid legal contracts ...." Ill.Rev.Stat. ch. 40, p 2205(a) (1983).[6] Thus, to protect minors from their own immaturity, our society holds parents legally responsible for the custody, care, and nurture of their minor children.
 
 
 82
 To aid parents in the challenging, difficult, and sometimes burdensome task of raising children and fulfilling the legal duty of providing for their well-being, our society grants parents the right, within bounds of reason, to direct the rearing of their children. In our free, democratic nation "[i]t is cardinal ... that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). See also H.L. v. Matheson, 450 U.S. 398, 410, 101 S.Ct. 1164, 1172, 67 L.Ed.2d 388 (1981) ("Matheson "); Bellotti II, 443 U.S. at 638, 99 S.Ct. at 3045 (plurality opinion). The Supreme Court has even acknowledged "the existence of a constitutional parental right against undue, adverse interference by the State." Bellotti II, 443 U.S. at 639 n. 18, 99 S.Ct. at 3046 n. 18 (plurality opinion) (emphasis added). According to the Court, "constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic to the structure of our society." Ginsberg v. New York, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968) (emphasis added). See also Matheson, 450 U.S. at 410, 101 S.Ct. at 1171; Bellotti II, 443 U.S. at 638, 99 S.Ct. at 3045 (plurality opinion). Thus, an integral component of the parents' legally mandated responsibility to provide for the supervision, health, maintenance, support, and well-being of their unemancipated minor children is the corresponding right of parents, as recognized in judicial interpretations of the Constitution, to direct the rearing of their children and to participate in the important decisions affecting their childrens' lives.
 
 
 83
 In the present case, there is no question that a minor, unemancipated, unmarried, immature, female child's decision whether or not to abort her pregnancy is an extremely important psychological, emotional, and physical choice. The Supreme Court has repeatedly recognized that "[t]he decision to abort ... is an important, and often a stressful one, and it is desirable and imperative that it be made with full knowledge of its nature and consequences." Planned Parenthood of Missouri v. Danforth, 428 U.S. 52, 67, 96 S.Ct. 2831, 2840, 49 L.Ed.2d 788 (1976) ("Danforth "). See also City of Akron v. Akron Center for Reprod. Health, 462 U.S. 416, 103 S.Ct. 2481, 2499, 76 L.Ed.2d 687 (1983) ("Akron "). There are a multitude of serious factors for the minor unemancipated child to consider in making an informed, mature abortion decision. The child must understand that abortion is a surgical procedure, see J. Pritchard & P. McDonald, Williams Obstetrics 603 (16th ed. 1980), that has far-reaching effects upon a young, sensitive female. There are severe psychological and emotional stresses involved not only before and during the abortion procedure, but for days, months, and even years following the procedure. It is well documented that mature women who undergo abortions often experience psychological disorders and mental health problems in the form of depressive psychosis. Impressionable, young females of tender years are even more susceptible to such mental disturbances when confronted with the emotional decision of whether or not to abort their pregnancy. For many individuals, including minor children, the abortion decision raises questions that are often influenced by sincere, deep-rooted religious beliefs, moral principles, and convictions. The dilemma and confusion that is instantly thrust upon a fragile, young female in her decision to bear a child may result in psychological, psychiatric, and moral scars that, all too frequently, never heal. Added to this mental strain and anguish is a consideration of the almost endless variety of physical risks involved in having an abortion. Depending upon the minor's physical characteristics and development, complications may very well arise during the abortion procedure that only an experienced, well-trained surgeon is capable of recognizing and effectively treating. Such complications include trauma, permanent damage to vital organs, dysfunction of the cardiovascular or respiratory system requiring cardiopulmonary resuscitation, internal bleeding or hemorrhaging of the uterine wall, cervical lacerations, uterine perforation, embolism of the blood vessels, allergic reaction to medication or anesthesia, if administered, and even the permanent impairment of reproductive organs.[7] Other medical factors that must be considered in making a mature, informed abortion decision include the type of abortion to be performed (dialation and curettage, dialation and vacuum aspiration, hysterotomy, or hysterectomy), the minor child's past medical history, her physical reaction to previous surgical procedures, her tolerance for certain medications, the chance that she is an RH-negative female, the likelihood of contracting a uterine infection, the chance that the placenta and fetus will not be completely removed, the potential for future difficulties in bearing children, and even the possibility of sexual sterility. There are the economic considerations of who will fund the abortion procedure and post-treatment check-ups, are the physician's rates reasonable, and will insurance cover the abortion and any costly medical or psychiatric complications that may arise following the surgical abortion procedure. There are also the social and psychological concerns of whether or not to inform the potential father of the pregnancy, whether or not to confide in friends about the decision, the fear of a life-long stigma if peers learn of the abortion, the feeling of anger toward the potential father and all males in general, the onset of guilt and overall withdrawal from society, and the ever present and increasing threat of teenage suicide. In addition, just as in any surgical procedure, the minor child is entitled to an explanation of the reasonable alternatives to abortion, including adoption and extended-family care with the assistance of parents, grandparents, and siblings. In this age of four, five, and six million dollar medical malpractice jury verdicts, it is also important to review the competence, qualification, and skill of the surgeon performing the abortion procedure, whether the surgeon is Board certified, whether the surgeon is accurate in his pregnancy term diagnosis, the surgeon's experience in dealing with the variety of complications that may very well arise during the abortion procedure, the quality of the abortion facility, and the sterility of the surgical tools and instruments to be used in the abortion procedure.
 
 
 84
 It defies reason to expect a minor, unemancipated, unmarried, immature, female child to properly and adequately consider each and every one of the important factors involved in the tumultuous abortion decision. The child should consult with the regular family physician who has treated her in the past and knows her unique physical characteristics, medication tolerances, and physical as well as psychological ability to undergo the stress involved in the abortion procedure. More importantly, the child needs the input, advice, and counsel of her parents, who are deeply concerned and interested in their daughter's welfare, have known her emotional and psychological makeup from birth, and can best identify and relate the psychological, moral, medical, social, economic, and practical factors to consider. The parents, who are legally responsible for their minor daughter's well-being before, during, and after the abortion, can review the competence, qualification, and training of the surgeon performing the abortion, provide the surgeon with relevant medical and psychological data concerning their daughter, seek additional medical consultation, if deemed necessary, and in the event a complication may arise, institute a lawsuit against the abortionist to recover for the injury or even the death of their daughter. In view of the minor child's clear need to consult with her parents in making a mature, informed, well-reasoned abortion decision:
 
 
 85
 "There can be little doubt that the State furthers a constitutionally permissible end by encouraging an unmarried pregnant minor to seek the help and advice of her parents in making the very important decision whether or not to bear a child. That is a grave decision, and a girl of tender years, under emotional stress, may be ill-equipped to make it without mature advice and emotional support. It seems unlikely that she will obtain adequate counsel and support from the attending physician at an abortion clinic, where abortions for pregnant minors frequently take place."
 
 
 86
 Danforth, 428 U.S. at 91, 96 S.Ct. at 2851 (Stevens, J., concurring) (footnote omitted). See also Matheson, 450 U.S. at 409-10, 101 S.Ct. at 1171-72; Bellotti II, 443 U.S. at 640-41, 99 S.Ct. at 3046-47 (plurality opinion). The Supreme Court further reasons that:
 
 
 87
 "The medical, emotional, and psychological consequences of an abortion are serious and can be lasting; this is particularly so when the patient is immature. An adequate medical and psychological case history is important to the physician. Parents case history is important to the physician. Parents can provide medical and psychological data, refer the physician to other sources of medical history, such as family physicians, and authorize family physicians to give relevant data."
 
 
 88
 Matheson, 450 U.S. at 411, 101 S.Ct. at 1172 (footnote omitted).
 
 
 89
 The Supreme Court, fully aware of the need to protect the minor unemancipated child from making an immature, uninformed decision of whether or not to abort her pregnancy, has approved of, and placed its imprimatur in no uncertain terms upon, state statutes requiring parental consultation in the abortion decision of a minor child. According to the Court, because:
 
 
 90
 "immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, a State reasonably may determine that parental consultation often is desirable and in the best interest of the minor. It may further determine, as a general proposition, that such consultation is particularly desirable with respect to the abortion decision--one that for some people raises profound moral and religious concern."
 
 
 91
 Bellotti II, 443 U.S. at 640, 99 S.Ct. at 3046 (plurality opinion) (footnotes omitted). See also Matheson, 450 U.S. at 409, 101 S.Ct. at 1171. Added to the minor child's need to consult with her parents to make a mature, informed abortion decision, is the parents' constitutional right to supervise, direct, and properly control the upbringing of their children. An essential component of the parents' right to direct the rearing of their children is the opportunity to participate in their daughter's important decisions, including the choice of whether or not to undergo an abortion procedure. Thus, to protect not only the minor child from making an immature, uninformed abortion decision, but also to protect the parents' constitutional right to direct and guide the rearing of their children, for whom the parents are legally responsible, "States have a legitimate interest in encouraging parental involvement in their minor children's decision to have an abortion." Akron, 103 S.Ct. at 2491 n. 10.
 
 
 92
 The Illinois General Assembly, in enacting the Illinois Parental Notice of Abortion Act, sought to protect minor unemancipated children from their own immaturity and to protect the constitutional right of parents to direct the upbringing of their children. The express legislative purpose of the Act is:
 
 
 93
 "to further the important and compelling State interests of: 1) protecting minors against their own immaturity, 2) fostering the family structure and preserving it as a viable social unit, and 3) protecting the rights of parents to rear children who are members of their household."
 
 
 94
 Ill.Rev.Stat. ch. 38, p 81-62(a) (emphasis added). To effectuate the intended purpose of the Act, the Illinois legislature enacted section 4(a) which provides that when a minor unemancipated child decides to abort her pregnancy, the child's parents must be notified and afforded a twenty-four hour period in which to analyze and discuss the decision with their daughter. The Illinois legislature, following extensive debate and thoughtful consideration of the fact that minor unemancipated children are generally unable to formulate informed, mature, well-reasoned decisions--as evidenced by their legal incapacity to enter into valid contracts in the State of Illinois--passed the twenty-four hour waiting period. According to the legislature's findings of fact:
 
 
 95
 "1) immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, 2) the medical, emotional and psychological consequences of abortion are serious and can be lasting, particularly when the patient is immature, 3) the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related, 4) parents ordinarily possess information essential to a physician's exercise of his best medical judgment concerning the child, and 5) parents who are aware that their minor daughter has had an abortion may better ensure that she receives adequate medical attention after her abortion."
 
 
 96
 Ill.Rev.Stat. ch. 38, p 81-62(b). The twenty-four hour waiting period affords minor unemancipated children and their parents at least a brief time to discuss and consider the numerous factors involved in reaching a mature, well-informed decision of whether or not to abort the pregnancy.
 
 
 97
 Within the twenty-four hour period, the parents have the opportunity to analyze the psychological and emotional stress that their young daughter is experiencing and may very well continue to experience for some time following the abortion procedure. The parents also have an opportunity to contact their daughter's regular family physician, inform him of the situation, and receive the medical advice necessary to aid the minor child in making a mature, informed decision. The parents, in fulfilling their legal responsibility and duty to provide for the child's well-being, may inquire into the competency of the surgeon performing the abortion to determine if he is a well-trained, qualified surgeon or simply a second-rate surgeon who entered the abortion practice because he was denied hospital staff privileges, by a medical peer review committee after questionable medical procedures or inferior surgical technique. Furthermore, the twenty-four hour period allows parents to discuss and explain the moral implications and deep religious concerns, if any, that are involved in the decision of whether or not to abort a pregnancy. The parents, likewise, may offer their young child valuable, experienced counsel and advice concerning the short- and long-term effects of bearing a child and of terminating a pregnancy. All too often minor female children find themselves trapped on an "abortion treadmill," inundated with opinions from peers and boyfriends to proceed immediately with the "quick fix" abortion procedure. The parents can help the child reflect upon abortion alternatives, reviewing the positive and negative aspects of adoption and extended-family care involving parents, grandparents, and siblings. Similarly, the parents, who have raised their child from birth, are in a better position to reasonably and objectively examine the psychological, moral, medical, social, economic, and practical considerations that so often become confused and muddled within the mind of a young, fragile female about to terminate a pregnancy. In sum, the twenty-four hour waiting period allows parents, who presumably best understand their own child's natural strengths and weaknesses, to offer their daughter guidance, security, comfort, and experienced counsel. Additionally, the twenty-four hour waiting period allows parents, at least for a day-long period, to participate in their daughter's abortion decision and thus exercise their constitutional right to supervise, direct, and properly control the rearing of their child, for whom the parents are legally responsible.
 
 
 98
 The majority rightfully acknowledges that the State "has a significant interest in promoting parental consultation with a minor before her decision to have an abortion." The majority speculates, however, that the twenty-four hour waiting period following parental notification imposes an undue burden upon the minor child because this day-long postponement may result in scheduling delays and conflicts at the abortion facility that will further complicate the child's decision to abort her pregnancy. According to the majority, a twenty-four hour delay could, hypothetically, result in a week-long delay depending upon the scheduling calendar of the doctor, the minor unemancipated child, and the abortion facility. So too, it is conceivable that a power outage, an automobile breakdown, or an illness to the physician could result in a week-long delay. Based upon sheer conjecture, the majority mistakenly concludes that the speculative scheduling conflicts that may be imposed upon a minor child by the twenty-four hour waiting period outweigh the child's need to make a mature, informed, well-reasoned abortion decision as well as the parents' constitutional right to participate in that decision. In support of this legally, morally, and socially unsound position, the majority relies upon this court's holding in Pearson that "the state cannot require that an abortion be delayed once notification has been effected upon a minor's parents." 716 F.2d at 1143. In addition, the majority blindly adheres to the language in Pearson that "[n]otification itself in most cases should lead to parental consultation without the state's additional help because minors are particularly susceptible to parental wishes ...." Id. Thus, according to the Pearson line of reasoning as adopted by the majority, the physician may fulfill his legal obligation by simply notifying the parents of their daughter's decision to abort her pregnancy and then, without disclosing the child's whereabouts, proceed immediately with the abortion procedure, never allowing the parents to participate in their daughter's abortion decision. What the majority fails to comprehend is that the Pearson decision is premised upon skewed logic, a flawed legal analysis, and a complete disregard for the parental rights involved.
 
 
 99
 In Pearson, the Indiana statute, similar to the Illinois Act in the present case, provided that parents must be notified of their minor unemancipated daughter's decision to have an abortion and, following this notification, the child must wait twenty-four hours before undergoing the abortion procedure. This court held the twenty-four hour waiting period unconstitutional because "the same objections to waiting periods for adults listed in City of Akron apply to waiting periods for minors." Pearson, 716 F.2d at 1143. The court's reasoning in Pearson, as well as the reasoning of the majority in the present case, contravenes logic, reason, and common sense as it leaps blindly from Akron, a case involving the abortion decision of mature adult women, to the completely separate and unrelated issue presented in this case; the need to protect minor, unemancipated, unmarried, immature, female children who lack the knowledge, experience, and judgment necessary to make a mature, informed, well-reasoned abortion decision. In Akron, the Supreme Court enumerated the objections to a waiting period as 1) the increased cost of making two separate trips to the abortion facility, and 2) the potential for scheduling conflicts and delays that could possibly prolong the surgical abortion procedure. The glaring distinguishing factor of Akron, however, is that the statute in that case applied to mature women of majority age and thus the State's only expressed interest in the twenty-four hour waiting requirement was to ensure that the "woman's decision be informed." 103 S.Ct. at 2503. According to the Court in Akron, the State's concern that mature adult women make informed abortion decisions did not outweigh the potential burden of delay that may be imposed upon those women by the twenty-four hour waiting period. Thus, the Court ruled that if a mature adult woman "is prepared to give her written informed consent and proceed with the abortion, a State may not demand that she delay the effectuation of that decision." Id.
 
 
 100
 In stark contrast, the twenty-four hour waiting period of the Illinois Act, just as the Indiana statute in Pearson, does not apply to mature adult women but exclusively to incompetents and minor, unemancipated, unmarried, immature, female children, legally dependent upon their parents. Unlike the State's interest in Akron --to ensure that all women, including mature adults, make an informed abortion decision--the State of Illinois' interest is to protect minor unemancipated female children from their own immaturity, as well as to protect parents' constitutional right to direct the upbringing of their minor children, for whom the parents are legally responsible. The obvious analytical difference between Akron and the present case is that adult women are presumed capable of making an informed, mature, well-reasoned choice while minor, unemancipated, immature, unmarried children lack the knowledge, experience, and judgment necessary to make an informed, mature abortion decision. The majority, just as the court in Pearson, fails to make this critical distinction between the twenty-four hour waiting period for mature adult women, held unconstitutional in Akron, and the twenty-four hour waiting period exclusively for minor unemancipated female children, as set forth in the Illinois Act. Indeed, aside from Pearson, every case cited by the majority holding waiting periods unconstitutional involves a statute that imposes a waiting period upon mature adult women, similar to the one in Akron. See Akron, 103 S.Ct. at 2489 (twenty-four hour waiting period applies to all women); American College of Obstetricians v. Thornburgh, 737 F.2d 283, 305 (3d Cir.1984), review granted, --- U.S. ----, 105 S.Ct. 2015, 85 L.Ed.2d 297 (1985) (twenty-four hour waiting period applies to all women); Women's Services, P.C. v. Thone, 690 F.2d 667, 668 (8th Cir.1982), vacated sub nom. Kerrey v. Women's Services, P.C., 462 U.S. 1126, 103 S.Ct. 3102, 77 L.Ed.2d 1358 (1983) (forty-eight hour waiting period applies to all women, see Women's Services, P.C. v. Thone, 483 F.Supp. 1022, 1050 n. 25 (D.Neb.1979)); Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1013 (1st Cir.1981) (twenty-four hour waiting period applies to all women); Charles v. Carey, 627 F.2d 772, 780 n. 11 (7th Cir.1980) (twenty-four hour waiting period applies to all women); Women's Medical Center of Providence, Inc. v. Roberts, 530 F.Supp. 1136, 1145 (D.R.I.1982) (twenty-four hour waiting period applies to all women); Leigh v. Olson, 497 F.Supp. 1340, 1347-48 (D.N.D.1980) (forty-eight hour waiting period applies to all women); Margaret S. v. Edwards, 488 F.Supp. 181, 212 (E.D.La.1980) (twenty-four hour waiting period applies to all women); Women's Community Health Cntr., Inc. v. Cohen, 477 F.Supp. 542, 548 (D.Me.1979) (forty-eight hour waiting period applies to all women).[8] The majority, in effect, fails to separate the wheat from the chaff. The Illinois Act does not impose a waiting period upon mature adult women, it simply requires that once the minor unemancipated child's parents have been notified of the abortion decision, the child must wait twenty-four hours before undergoing the surgical abortion procedure. The purpose of the twenty-four hour waiting period is to afford parents an opportunity to supervise and direct the raising of their minor daughter and offer valuable advice, guidance, protection, support, and counseling to aid the immature child in making a mature, informed, well-reasoned decision of whether or not to abort her pregnancy.
 
 
 101
 In Pearson, the court asserted, as does the majority in the present case, that "[n]otification itself in most cases should lead to parental consultation without the state's additional help because minors are particularly susceptible to parental wishes ...." 716 F.2d at 1143. I initially note that this statement, aside from equivocating with the speculative term "should," misses the very point of a waiting period for minor, unemancipated, unmarried, immature, female children; namely, that children must be protected from making an immature, uninformed abortion decision and that parents have a constitutional right to direct the upbringing of their children. The State is required to protect the interests of parents and their children, not blithely leave it to chance that a particular minor child will be "susceptible to parental wishes." I further note that parental notification itself, without a waiting period, neither allows nor assures parents an opportunity to analyze and discuss with their minor daughter the multitude of factors necessary to consider when deciding whether or not to abort a pregnancy. According to the terms of the notification statute, the surgeon need only notify the parents of their daughter's decision to abort her pregnancy and, having fulfilled this legal obligation, the surgeon can proceed immediately with the abortion, never allowing the parents an opportunity to participate in the decision. Such a result is legally, morally, and socially insupportable when one considers that the parents are not only legally responsible for the well-being and financial obligations of their minor daughter before, during, and after the abortion, but have a constitutional right to supervise, direct, and control their daughter's upbringing.
 
 
 102
 I am convinced that the only feasible way for a State to protect minor unemancipated children from their own immaturity and lack of experienced judgments in the affairs of life, as well as to protect the constitutional right of parents to direct the rearing of their children, short of a parental consent statute, is to require a minimal waiting period following parental notification.[9] The Illinois legislature has a compelling interest in safeguarding minor, unemancipated, unmarried, immature, female children from making an immature, uninformed abortion decision. Moreover, the Illinois legislature has a compelling interest in protecting the constitutional right of parents to direct the upbringing of their minor unemancipated child, especially when one considers that the State of Illinois holds these parents legally responsible for their daughter's well-being before, during, and after the abortion, until the child reaches the majority age of eighteen. The State's interest in protecting minor children and their parents' constitutional right clearly outweighs any potential burden of delay placed upon the minor unemancipated female child by the twenty-four hour waiting period. Indeed, the Supreme Court, realizing the inability of minor children to make an informed, mature, well-reasoned abortion decision, has consistently upheld the constitutionality of parental consent statutes. See Ashcroft, 103 S.Ct. at 2525; Akron, 103 S.Ct. at 2497; Bellotti II, 443 U.S. at 640, 99 S.Ct. at 3046 (plurality opinion). These parental consent statutes, as upheld by the Supreme Court, create a potential for extended delay because the minor child is required to obtain actual parental consent before undergoing the abortion procedure. In contrast, the twenty-four hour waiting period simply requires the child to wait twenty-four hours from the time of parental notification before aborting her pregnancy.
 
 
 103
 The twenty-four hour waiting period of the Illinois Act appears, at best, to be a product of political compromise. It is clear that parental consent statutes are constitutionally permissible if drafted in compliance with the Supreme Court's legal standards. The parental consent statute is certainly the most effective means of ensuring that minor unemancipated children make a mature, informed, well-reasoned abortion decision and that parents have an opportunity to participate in that decision. The Illinois statutory scheme provides, however, that minor unemancipated pregnant children are legally capable of consenting to a medical or surgical procedure. See Ill.Rev.Stat. ch. 111, p 4501.[10] Thus, in Illinois a minor unemancipated pregnant child, who is legally incapable of entering into a valid contract, may consent to an abortion. Given this inconsistent provision of Illinois law, allowing minor, unemancipated, immature, unmarried, female children to consent to an abortion, the waiting period is the next most effective means of ensuring that parents assist their child in making a mature, informed, well-reasoned abortion decision.[11] Thus, I believe the twenty-four hour waiting period of section 4(a) properly protects minor unemancipated children and their parents' constitutional right without unnecessarily and excessively delaying or infringing upon the minor, unemancipated, unmarried, immature, female child's decision to abort her pregnancy.
 
 
 104
 I add that section 7(a) of the Act also protects minor unemancipated children from their own immaturity and the constitutional right of parents to direct the rearing of their children, for whom the parents are legally responsible. Section 7(a) provides that no parental notification need be given if parents accompany the child to the abortion facility or if the child presents the surgeon a notarized statement, signed by her parents, acknowledging her abortion decision. In either situation, the minor child has obviously informed her parents of the abortion decision and the parents have had an opportunity to discuss the decision with their daughter. Thus, it is reasonable to assume that the child has received the mature advice, input, and counsel of her parents or legal guardian and that the parents have exercised their constitutional right to direct the rearing of their minor child. Accordingly, I would uphold section 4(a) and section 7(a) of the Act as promoting the State of Illinois' compelling interest in protecting minor unemancipated children from making an uninformed, immature abortion decision and in protecting the right of parents, as recognized in judicial interpretations of the Constitution, to participate in the abortion decision of their minor unemancipated daughter. In addition, I believe that we must consider setting aside this court's erroneous ruling in Pearson, which failed to distinguish between the waiting period requirement for mature adult women held unconstitutional in Akron and the waiting period requirement for minor, unemancipated, unmarried, immature, female children presented in this case. It is evident that the State of Illinois has a compelling interest in passing well-reasoned, compromised legislation that protects minor unemancipated children from their own immaturity and also protects parents' constitutional right to direct the rearing of their children, for whom the parents are legally responsible.
 
 
 105
 B. JUDICIAL ALTERNATIVE TO PARENTAL NOTIFICATION
 
 
 106
 The Supreme Court has approved state statutes requiring parental consent to a minor unemancipated female child's decision to abort her pregnancy. See Ashcroft, 103 S.Ct. at 2525; Akron, 103 S.Ct. at 2497; Bellotti II, 443 U.S. at 640, 99 S.Ct. at 3046 (plurality opinion). The Supreme Court requires, however, that "if the State decides to require a pregnant minor to obtain one or both parents' consent to an abortion, it also must provide an alternative procedure whereby authorization for the abortion can be obtained." Bellotti II, 443 U.S. at 643, 99 S.Ct. at 3048 (plurality opinion) (footnote omitted). Indeed, "the State must provide an alternative procedure whereby a pregnant minor may demonstrate that she is sufficiently mature to make the abortion decision herself or that, despite her immaturity, an abortion would be in her best interests." Akron, 103 S.Ct. at 2498. See also Ashcroft, 103 S.Ct. at 2525. In the present case, the Illinois Act merely requires parental notification, not parental consent, of the minor unemancipated child's decision to terminate her pregnancy. Nevertheless, the Supreme Court has indicated that an alternative procedure must also be provided when parental notification is involved. See Bellotti II, 443 U.S. at 651, 99 S.Ct. at 3052 (plurality opinion). According to the Supreme Court, the alternative procedure is necessary because the "state and parental interests must give way to the constitutional right of a mature minor or of an immature minor whose best interests are contrary to parental involvement." Akron, 103 S.Ct. at 2491 n. 10.
 
 
 107
 In Bellotti II the Supreme Court established that the alternative procedure to parental notification "must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained." 443 U.S. at 644, 99 S.Ct. at 3048 (plurality opinion). See also Ashcroft, 103 S.Ct. at 2525 n. 16. In the present case, section 5 of the Act provides minor unemancipated children with a judicial alternative to parental notification. The minor may appear in an Illinois state court on her own behalf, with counsel of her choice, or with court-appointed counsel, and request that the court waive the parental notification requirement of section 4(a). The minor is not required to pay the statutory filing fee and, pursuant to section 5(c) of the Act, the entire court proceeding "shall be confidential." The Act further provides for an expedited judicial procedure, requiring the Illinois state court to rule, within forty-eight hours of the child's application, on whether the minor unemancipated child is "mature and well-informed enough to make the abortion decision on her own, or ... that notice ... would not be in the best interests of the minor ...." Ill.Rev.Stat. ch. 38, p 81-65(d). Moreover, the court must issue written findings of fact and conclusions of law to support its decision. Ill.Rev.Stat. ch. 38, p 81-65(e). Pursuant to section 5(f) of the Act, if the Illinois state court denies the minor child's application for waiver of parental notification, the child is entitled, as a matter of right, to an expedited confidential appeal within the Illinois state court system. Because the Illinois Constitution, art. VI, Sec. 16, mandates that the Illinois Supreme Court is to enact rules of appellate procedure, section 5(g) of the Act requests the Illinois Supreme Court "to promulgate any rules and regulations necessary to ensure that proceedings under this Act are handled in an expeditious and confidential manner." Ill.Rev.Stat. ch. 38, p 81-65(g). The plaintiff class complains that the judicial alternative to parental notification contained in section 5 fails to satisfy the constitutional requirements of anonymity and expeditious appellate review required by Bellotti II.
 
 
 108
 The plaintiff class initially argues that use of the word "confidential" in section 5 of the Act does not satisfy the constitutional requirement of Bellotti II that the alternative procedure ensure the unemancipated minor's anonymity. I agree with the majority that the plaintiffs' hypertechnical, attempted semantic distinction between the words "confidential" and "anonymity" lacks merit. The purpose of the anonymity requirements is to safeguard the unemancipated minor child's privacy in her attempt to waive the parental notification requirement. The term "confidential" is more than adequate to ensure the child's privacy. Indeed, the Supreme Court, when discussing the anonymity requirement, uses the terms "confidentiality" and "anonymity" interchangeably. See Ashcroft, 103 S.Ct. at 2525 n. 16. See also Bellotti II, 443 U.S. at 645, 99 S.Ct. at 3049 (plurality opinion) ("preserve confidentiality as to the minor"). Thus, the Illinois legislature's use of the term "confidential" clearly satisfies the anonymity requirement set forth in Bellotti II. I further note that on June 30, 1984, the Illinois legislature amended section 5(c) of the Act to provide, in pertinent part, that "Court proceedings under this section shall be confidential and shall ensure the anonymity of the minor or incompetent." See 1984 Ill.Leg.Serv. 270 (West) (emphasis original). In view of this recent amendment, there is no question that section 5 of the Act ensures anonymity of the minor unemancipated child throughout the judicial waiver proceedings.
 
 
 109
 Despite the constitutionality of the anonymity requirement of section 5, the majority enjoins enforcement of the Act until the Illinois Supreme Court promulgates rules of confidentiality. According to the majority, "the Illinois statute does not make any specific provisions to assure the minor's anonymity at the waiver hearing." The majority's speculative concern apparently lies in the fact that the Illinois statute, unlike the Missouri statute upheld by the Supreme Court in Ashcroft, does not direct that the initials of the minor unemancipated child be used on the waiver petition filed in state court. The majority's reasoning disregards the Supreme Court's proviso in Ashcroft that the state legislature need only "provide[ ] the framework for a constitutionally sufficient means" of ensuring the anonymity of the minor child throughout the judicial waiver proceeding. 103 S.Ct. at 2525 n. 16 (emphasis added). The Illinois legislature has indeed provided this framework in sections 5(c) and 5(f) of the Act, requiring that the initial proceedings and any appeals be "confidential." Because the district court enjoined enforcement of the Act some five days before its effective date, the Illinois Supreme Court has had no need to promulgate rules concerning confidentiality. There is no reason to believe, however, that the state court judges of Illinois will not comply with the mandate of prior United States Supreme Court opinions and ensure the anonymity of the minor unemancipated female child throughout the judicial waiver proceedings. The Illinois state court judges are, in my opinion, as equally competent and dedicated as are the members of this court in properly interpreting and adhering to the existing Supreme Court case law. Indeed, if the Illinois state court judges fail to provide for the anonymity of the minor unemancipated child, they will be in direct violation of the law. The majority's speculative assertion that Illinois state courts will not adequately provide for the anonymity of minor unemancipated children is sheer conjecture, without any basis in reason or experience. Thus, I disagree with the majority's reasoning and would hold that section 5 does, in fact, provide the framework necessary to ensure the anonymity of the minor unemancipated child throughout the judicial waiver proceedings.
 
 
 110
 The plaintiff class also contends that the appeal process, as adopted by the Illinois legislature in section 5 of the Act, fails to satisfy the constitutional requirement of Bellotti II that the alternative to parental notification be completed with expediency. Section 5(f) of the Act provides that "[a]n expedited confidential appeal shall be available, as the Supreme Court provides by rule ...." Ill.Rev.Stat. ch. 38, p 81-65(f). According to the Illinois Constitution, art. VI, Sec. 16, the Illinois Supreme Court is to enact rules of appellate procedure, thus the Illinois legislature directs, in plain and simple language, that the Illinois Supreme Court "promulgate any rules and regulations necessary to ensure that proceedings under this Act are handled in an expeditious ... manner." Ill.Rev.Stat. ch. 38, p 81-65(g). In Ashcroft, the Supreme Court considered an almost identical statute that provided:
 
 
 111
 "The notice of intent to appeal shall be given within twenty-four hours from the date of issuance of the order. The record on appeal shall be completed and the appeal shall be perfected within five days from the filing of notice to appeal. Because time may be of the essence regarding the performance of the abortion, the supreme court of this state shall, by court rule, provide for expedited appellate review of cases appealed under this section."
 
 
 112
 103 S.Ct. at 2525 n. 16 (emphasis added). The Court in Ashcroft upheld the Missouri statute because it "provides the framework for a constitutionally sufficient means of expediting judicial proceedings." Id. The Court further noted that immediately after its effective date, the Missouri statute was enjoined and thus "there has been no need for the state supreme court to promulgate rules concerning appellate review." Id. Similarly, in the present case the Illinois legislature has provided the framework necessary for expediting the appeal of a judicial decision denying a minor child's application to waive parental notification. Because the district court enjoined the Act before it ever became effective, the Illinois Supreme Court has had absolutely no need to promulgate rules of appellate review. I agree with the common sense approach of the Supreme Court in Ashcroft that "[t]here is no reason to believe that [Illinois] will not expedite any appeal consistent with the mandate" of prior Supreme Court opinions. Id.
 
 
 113
 The majority's attempt to distinguish section 5 of the Illinois Act from the Missouri statute held constitutional in Ashcroft is, at best, unpersuasive. It is true that the Illinois Act does not provide rules for the filing or perfection of appeals as did the Missouri statute in Ashcroft. Nevertheless, the Illinois Act provides the framework necessary to satisfy the constitutional requirement of an expedited appellate review. I have every reason to believe that the well-trained judges within the Illinois state court system will follow the controlling statutes and case law, expediting appeals consistent with the Supreme Court's decisions. Thus, unlike the majority, I would hold that section 5 of the Act provides the framework necessary to provide minor unemancipated children with expedited appeals of judicial determinations denying waiver of parental notification.
 
 
 114
 I add that the majority's concern over the lack of any Illinois Supreme Court rules to ensure anonymity and expediency in the judicial waiver proceedings is premised, in large measure, upon the Third Circuit's opinion in American College of Obstetricians v. Thornburgh, 737 F.2d 283 (3d Cir.1984), review granted, --- U.S. ----, 105 S.Ct. 2015, 85 L.Ed.2d 297 (1985). In that case, the Pennsylvania Abortion Control Act of 1982 provided for an expedited and confidential judicial waiver proceeding but required the Pennsylvania Supreme Court to promulgate rules to "ensure confidentiality and ... promptness of disposition." 737 F.2d at 307-08. Despite the clear framework for a confidential and expedited judicial proceeding, the Third Circuit enjoined enforcement of the Act until the Pennsylvania Supreme Court promulgated such rules "assuring confidentiality and promptness of disposition ...." Id. at 297. I note that on April 15, 1985, the Supreme Court granted review of the Third Circuit's opinion. See --- U.S. ----, 105 S.Ct. 2015, 85 L.Ed.2d 297 (1985). One of the issues before the Supreme Court is whether the "court of appeals misappl[ied] precedents of [the] Supreme Court in declaring unconstitutional numerous provisions of Pennsylvania's Abortion Control Act." Id. at 3727. I believe that the Third Circuit's decision to enjoin enforcement of the Pennsylvania Abortion Control Act until the Pennsylvania Supreme Court promulgates rules of anonymity and expeditious appellate review is in direct conflict with the Supreme Court's directive in Ashcroft that the state legislature need only provide the framework necessary to ensure anonymity and expediency throughout the judicial waiver proceedings.
 
 III
 
 115
 In summary, the twenty-four hour waiting period of section 4(a) is constitutional because it protects minor, unemancipated, unmarried, immature, female children who are legally dependent upon their parents from making an immature, uninformed abortion decision. Moreover, the twenty-four hour waiting period protects parents' constitutional right to direct the upbringing of their minor children. Under Illinois law, parents are legally responsible for the health, maintenance, support, and well-being of their minor children and also for the decisions made by their minor children, including the decision to undergo a surgical abortion procedure. As a corresponding liberty to these legal responsibilities, parents have the right, as recognized in judicial interpretations of the Constitution, to participate in their minor unemancipated daughter's abortion decision. Section 5 of the Act is also constitutional because it provides the framework necessary to 1) ensure the anonymity of the minor unemancipated child throughout the judicial waiver proceeding, and 2) expedite the appeal of a judicial determination to deny the minor child's application to waive parental notification. Thus, unlike the majority, I would not defeat the sincere efforts of the competent Illinois legislature to protect minor unemancipated children from their own immaturity and to protect the constitutional right of parents to direct the rearing of their children. I would not sever section 4(a) from the Act nor enjoin enforcement of the Act until the Illinois Supreme Court promulgates rules of confidentiality and expedited appellate review. Instead, I would reverse the district court, vacate the permanent injunction, and allow the State of Illinois to implement the will of its citizenry, as expressed by the Illinois legislature in the Parental Notice of Abortion Act of 1983.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior Judge of the United States District Court for the District of Kansas, is sitting by designation
 
 
 [1]
 In Illinois a second trimester abortion also must be performed in a hospital on an inpatient basis. See 38 Ill.Rev.Stats. p 81-24 Sec. 4 (1983)
 
 
 [1]
 The Parental Notice of Abortion Act of 1983 is set forth, in its entirety, in the Zbaraz v. Hartigan, 584 F.Supp. 1452, 1467-71 (N.D.Ill.1984). See also Ill.Rev.Stat. ch. 38, p 81-61 et seq. (Smith-Hurd Supp.1984-1985)
 
 
 [2]
 On June 30, 1984, the Illinois General Assembly amended section 5(c) of the Act to provide:
 "(c) Court proceedings under this Section shall be confidential and shall ensure the anonymity of the minor or incompetent. These proceedings shall be given such precedence over other pending matters as is necessary to ensure that the court may reach a decision promptly, but in no case shall the court fail to rule within 48 hours of the time of application, provided that the 48 hour limitation may be extended at the request of the minor or incompetent."
 1984 Ill.Leg.Serv. 270 (West) (emphasis original).
 
 
 [3]
 The district court gratuitously addressed issues "not raised explicitly by the parties." Zbaraz v. Hartigan, 584 F.Supp. at 1464. The issues included the provision of section 8 that "any person ... who intentionally, knowingly, or recklessly fails to conform to the requirement of this Act, is guilty of a class A misdemeanor"; the provision of section 8 that in a civil action under this statute, "the law of this State shall not be construed to preclude the award of exemplary damages"; and the definition of actual notice in section 3(c) as "giving notice directly or by telephone." Id. at 1465-66 (emphasis original). I agree with the majority that we need not rule on these issues, as they were never presented to the district court and thus are not properly before this court for review
 
 
 [4]
 The Act also applies to incompetents, defined as "any person who has been adjudged a disabled person and has had a guardian appointed for her as provided for under Section 11a-3(a)(1) or Section 11a-3(3) of the Probate Act of 1975." See Ill.Rev.Stat. ch. 38, p 81-63(e)
 
 
 [5]
 The Act defines an emancipated minor as "any minor who is or has been married or has by court order otherwise been freed from the care, custody, and control of her parents." Ill.Rev.Stat. ch. 38, p 81-63(b)
 
 
 [6]
 I note an apparent anomaly in the Illinois statutory scheme. Even though minor unemancipated children are legally incapable of entering into valid contracts in the State of Illinois, a minor unemancipated pregnant child is legally capable of consenting to the performance of a medical or surgical procedure. According to Ill.Rev.Stat. ch. 111, p 4501 (1983):
 "The consent to the performance of a medical or surgical procedure by a physician licensed to practice medicine and surgery executed by a ... pregnant woman who is a minor ... is not voidable because of such minority, and, for such purpose, ... a pregnant woman who is a minor ... is deemed to have the same legal capacity to act and has the same powers and obligations as has a person of legal age."
 Thus, in the case of a minor unemancipated pregnant female child, the Illinois legislative scheme, not in conformity with any decisions of the United States Supreme Court, carves out an exception to the general rule that minor unemancipated children lack the knowledge, experience, and judgment to make mature, informed, well-reasoned decisions.
 
 
 [7]
 Due to the wide variety of medical complications that may, and often do, arise during an abortion procedure, the abortion facility must have basic, life-saving medical equipment and qualified personnel to operate such equipment, as well as immediate access to a hospital. Indeed, "[w]hen an abortion is not performed in a hospital setting, it is imperative that the capabilities for effective cardiopulmonary resuscitation be immediately available and that hospitalization can be promptly facilitated whenever needed." J. Pritchard & P. MacDonald, Williams Obstetrics 603 (16th ed. 1980)
 
 
 [8]
 The majority cites Wynn v. Carey, 599 F.2d 193 (7th Cir.1979) for the proposition that a waiting period imposed upon a minor unemancipated child is unconstitutional. In that case, however, this court held the forty-eight hour waiting period for minor unemancipated children unconstitutional because it violated the Equal Protection Clause of the Fourteenth Amendment by excluding married minors and including mature, emancipated minors. The court never addressed the issue presented in this case--whether the forty-eight hour waiting period unduly burdens the minor's decision to abort her pregnancy--and thus the legal analysis in Wynn v. Carey fails to support the majority's position
 
 
 [9]
 The Supreme Court has repeatedly held that a "State's interest in protecting immature minors will sustain a requirement of a consent substitute, either parental or judicial." Ashcroft, 103 S.Ct. at 2525. See also Akron, 103 S.Ct. at 2497; Bellotti II, 443 U.S. at 640, 99 S.Ct. at 3046 (plurality opinion). Thus, parental consent statutes are constitutionally permissible if drafted in compliance with the Supreme Court's legal standards. In the present case, a statute requiring parental consent of a minor unemancipated female child's decision to have an abortion would apparently conflict with Ill.Rev.Stat. ch. 111, p 4501, which permits a minor unemancipated pregnant child to consent to a medical or surgical procedure. See supra note 6
 
 
 [10]
 See supra note 6
 
 
 [11]
 A parental consent statute ensures parents an opportunity to participate in the abortion decision of their minor child, for whom the parents are legally responsible. In the absence of a parental consent statute or a notification and waiting period statute, I believe the State has a duty to protect parents from being held legally responsible for the medical costs arising out of their daughter's abortion because such parents have had no opportunity to participate in the abortion decision