**ANNEX BOOKS, INC. et al, Plaintiffs,**

v.

**CITY OF INDIANAPOLIS, Defendant.**

**No. 1:03–CV–00918–SEB–VS.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 27, 2004.

J. Michael Murray, Jeremy A. Rosenbaum, Lorraine R. Baumgardner, Steven D. Shafron, Berkman Gordon Murray & Devan, Cleveland, OH, Richard Kammen, Gilroy, Kammen & Hill, Indianapolis, IN, for Plaintiffs.

April Edwards Sellers, Anthony W. Overholt, Mark Jason Crandley, Office of Corporation Counsel, Teri Jayne Kendrick, Assistant Corporation Counsel, Indianapolis, IN, for Defendant.

*ENTRY ON DEFENDANT'S AND
PLAINTIFF'S CROSS MOTIONS
FOR SUMMARY JUDGMENT*

BARKER, District Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment regarding the constitutionality of Chapters 801 and 807 of the Revised Code of the Consolidated City and County of Indianapolis. Chapter 801 is the general licensing ordinance for businesses in Marion County and Chapter 807 governs the licensing and regulation of adult entertainment establishments. For the reasons that follow, we *DENY* Plaintiffs' Motion for Summary Judgment and *GRANT* in part and *DENY* in part Defendant's Motion for Summary Judgment.

*Factual and Procedural Background*

*The Parties*

Plaintiffs are Indianapolis retail stores which sell, rent and display adult oriented videos, magazines and other materials: Annex Books, Inc. ("Annex Books"), Keystone Video & Newsstand, Inc. ("Keystone Video"), Lafayette Video & News, Inc. ("Lafayette Video"), New Flicks, Inc.

("New Flicks") and Southern Nights, Inc. ("Southern Nights"). The defendant is the City of Indianapolis ("City").

*The Ordinances*

Under Chapter 807 of the Revised Code of the Consolidated City and County of Indianapolis ("Revised Code"), all adult entertainment establishments,[1] including adult bookstores, must be licensed by the City Controller ("Controller"). Am. Compl. ¶¶ 6, 11; Revised Code Sec. 807–202.[2] An adult bookstore is an establishment which either (1) devotes at least 25% of its retail floor space to the display of "adult products,"[3] (2) has at least 25% of its stock in trade in adult products, or (3) derives at least 25% of its weekly revenue from adult products. Each plaintiff meets the definition of an adult bookstore. Def.'s Br. at 3.

The adult entertainment business ordinance contains provisions which, *inter alia*, regulate the licensing of adult bookstores, set out premises requirements (such as floor layout, lighting configurations, hours of operation), and authorize inspections of the premises to ensure they are maintained in a sanitary condition.

The licensing procedure is straightforward. An application for an adult enter-

---

1. Section 807–105 defines an adult entertainment business as any or all of the following: an adult bookstore, adult motion picture theater, adult mini motion picture theater, adult motion picture arcade, adult cabaret, adult drive-in theater, adult live entertainment arcade, adult motel, or adult services establishment. *See also* sections 807–103, 104, 106–112.

2. Sec. 807–202(a): It shall be unlawful for any person to maintain or operate an adult entertainment business in the city without first obtaining a license therefor from the Controller.

3. Sec. 807–103(3): The phrase "adult products" means book, magazines, periodicals or other printed matter, or photographs, films,

motion pictures, video cassettes, slides, tapes, records or other forms of visual or audio representations which are distinguished or characterized by their emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas. For purposes of this definition, the phrase adult products also means a device designed or marketed as useful primarily for the stimulation of human genital organs, or for sadomasochistic use or abuse. Such devices shall include, but are not limited to, phallic shaped vibrators, dildos, muzzles, whips, chains, bather restraints, racks, non-medical enema kits, body piercing implements (excluding earrings or other decorative jewelry) or other tools of sadomasochistic abuse.

tainment business license is made to the City Controller and requires certain sworn disclosures, the legality of which are not at issue in this case. Sec. 807–204. The applicant must also pay a license fee and submit a diagram of the business premises. Sections 807–203, 301. The Controller has forty-five (45) days in which to determine whether to issue a license. The applicant/business may begin operating within forty-five (45) days of submitting the completing application; in the event the license is denied, a conditional license to operate must issue so long as the applicant seeks judicial review within ten (10) days of receiving notice of the Controller's adverse licensing decision. Sec. 807–204(c).

The Controller may deny a license application or renewal only if the applicant:

(1) Where applicable, is not a corporation organized by law or authorized and qualified to do business in the state;

(2) Has not fully paid the license fee;

(3) Is delinquent to the city, county or state for any taxes, or is indebted to the city, county or state for any other reason unless the delinquency or indebtedness is the subject of pending litigation; or

(4) Has failed to provide all information required by this article or has falsely provided such information.

Sec. 807–205.

The City asserts that the general license ordinance, Chapter 801, mandates that whenever any sort of license application is denied, the Controller must provide the applicant with written notice of the denial stating the reason for the denial and informing the applicant of its right to request a Controller's hearing, as well as the right to appeal the decision to the license review board. *See* Sec. 801–210(a); Def.'s Br. at 5. In addition to the right to request an administrative appeal under Chapter 801, the adult entertainment business ordinance explicitly provides the aggrieved applicant with the right to judicial review of the licensing decision.

Sec. 807–207. *Judicial review of denial, suspension or revocation.*

(a) A denial of an application for a license or for renewal of a license under this chapter shall not be subject to administrative review under the procedures provided in Chapter 801, Article IV, Divisions 2 and 3 of this Code, but in the alternative may be appealed to the Marion Superior Court.

The "procedures" in Chapter 801 referred to in the above provision are found in the general business license ordinance and pertain to license enforcement and review, specifically the procedures which govern a Controller's hearing (Division 2) and a subsequent appeal to the license review board (Division 3). The City contends that while the adult entertainment business ordinance excludes certain procedures, they are supplanted by the procedures found in "License Regulation of the Controller of the City of Indianapolis 96–5." Def.'s Br. at 5; Def.'s Mot. for SJ, Ex. 9/B. Regulation 96–5 applies to all Controller's hearings regarding the issuance, denial, suspension or revocation of any license. Reg. 96–5, Sec. 1(a); *see also* Ex. 9; Aff. of Adonna White, ¶ 9. The regulation provides for an informal evidentiary hearing (Section V, Hearing Procedures) at the conclusion of which the Controller "may either announce his decision or take the matter under advisement and reach a decision at a later time." (Section VI, Decision of the Controller). It also expressly states that "[n]othing herein shall require the Controller to conduct a hearing in any instance; unless required by the ordinance, the decision of whether to conduct a hearing remains within the discretion of the Controller." Reg. 96–5, Section 1(B).

Once a business is operating with an adult business entertainment license, it is

subject to two primary operational requirements: inspections without notice and hours of operation.[4]

**Sec. 807–302.** *Operational requirements.*

(b) An adult entertainment establishment business shall be kept in a sanitary condition at all times. As a condition of licensure under this chapter, the Controller or Controller's designee shall have the right to enter any licensed premises at any time during business hours without notice to insure compliance with this chapter, and it shall be unlawful for a person to prevent or deny any such entry. The Controller shall have the power to determine if such establishment business is in a sanitary condition. For such purpose, the Controller shall have, upon demand, the assistance of the administrator of the division of compliance of the department of metropolitan development, and the Health and Hospital Corporation of Marion County. If the Controller shall determine, after investigation by the division of development services or the Health and Hospital Corporation of Marion County, that an unsanitary condition exists within an adult entertainment establishment business, the Controller shall suspend the establishment license for such premises until such unsanitary condition is rectified.

A violation of an operational requirement may result in the suspension or revocation of an adult entertainment establishment license. Sec. 807–206(a)(3).

The final, relevant provision of the adult entertainment business ordinance is Section 807–401, addressing the severability of any sections or subsections of Chapter 807 in the event they are found invalid.

**Sec. 807–401.** *Severability.*

In the event any section, subsection, clause, phrase or portion of this chapter is for any reason held illegal, invalid or unconstitutional by any court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision, and such holding shall not affect the validity of the remainder of this chapter. It is the legislative intent of the council that this chapter would have been adopted if such illegal provision had not been included or any illegal application had not been made.

*Procedural Background*

This litigation began in June 2003 following Annex Books' unsuccessful attempts to obtain an adult entertainment license under the version of the ordinance then in effect. Annex applied for a license in April 2003, resubmitted the application later in the month with the proper fee, and on June 6, 2003, was notified that, rather than accepting or denying the application for a license, the Controller was initiating an investigation to determine whether Annex met the qualifications for licensure. A hearing was set for June 24, 2003. Compl. ¶¶ 8–10.

Annex Books filed in this court a Complaint and Motion for Preliminary Injunction on June 19, 2003, challenging the constitutionality of the licensing ordinances and enjoining the enforcement of Sections 801 and 807. The City was granted a stay of the proceedings until October 31, 2003, during which time the ordinances at issue were amended.[5] Def.'s Br. in Support of

---

**4.** The ordinance restricts the hours of operation for an adult entertainment business in Sec. 807–302(d): Adult entertainment businesses shall not be open between the hours of midnight and 10:00 a.m. and shall not be open on Sundays. The provision, however, is not at issue in this litigation.

**5.** The amendments, which were adopted by the City–County Council and went into effect on October 18, 2003, significantly revised the

Mot. to Dismiss, pp. 2–4. It is the amended adult entertainment business ordinance which is before us here and is the subject of the parties' cross-motions for summary judgment. Additional parties joined the litigation following the adoption of amended Chapter 807, claiming they now fall within the scope of the ordinance and must comply with licensing and regulatory provisions whereas previously they did not. Pls.' Mem. in Supp. of Mot. for T.R.O. at 3.

Following an evidentiary hearing on the plaintiffs' motion for temporary restraining order, we granted a TRO on October 31, 2003. In that entry, we held that because Chapter 807 did not provide the possibility of meaningful administrative and judicial review, the constitutionality of the entire ordinance was questionable based on its inability to comply with the Supreme Court's requirement for "prompt judicial review" in the context of First Amendment-related licensing schemes.[6] We found this deficiency so central to the constitutionality of the challenged ordinance that it could not be severed from the ordinance such as would allow the remaining provisions of the ordinance to survive. *See* Entry Granting Plaintiffs' Motion for TRO, November 3, 2003.

We now address whether the provisions of the City's adult entertainment business licensing law, as expressed in sections 801 and 807, are unconstitutional on their face and as applied under the First, Fourth and Fourteenth Amendments to the United States Constitution. Am. Compl. ¶¶ 13, 18, 20, 42.

*Discussion*

The City has moved for summary judgment on the grounds that Chapter 807 of the Revised Code does not violate: (1) the First and Fourteenth Amendments, because it allows Plaintiffs to seek immediate judicial review in state courts and to do so based on an adequate administrative record; (2) the First Amendment, because it is a "content neutral" regulatory system legitimately aimed at curbing the adverse secondary effects of adult businesses; and (3) the Fourth Amendment, because the ordinance authorizes site visits only at times when the adult businesses are open to the public. Annex Books et al have moved for summary judgment only on the issue of judicial review.

We turn first to the issue of judicial review, which we consider in light of our earlier ruling that the constitutionality of that provision is central to the constitutionality of the entire ordinance and may not be severed from the ordinance as a whole in order to reach the constitutionality of the remaining provisions.

*Judicial Review Analysis Under the First and Fourteenth Amendments*

Since the time of our ruling granting Plaintiffs' motion for a temporary restraining order, one significant development has occurred which now influences our analysis

---

adult entertainment business ordinance. For instance, the Controller now has a set time period—forty-five (45) days—from receipt of an application in which to issue or deny a license (Sec. 807–204(c)); there is a judicial review provision when previously there was none (Sec. 807–207); there are only four grounds for denial of a license application or renewal (Sec. 807–205); there are significantly fewer and less intrusive disclosure requirements (Sec. 807–204); inspectors now may enter licensed premises only during business hours whereas the previous provision allowed for inspection "at any time without notice." (Sec. 807–302).

**6.** A plurality in *FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 229, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) held that the Dallas zoning and licensing ordinance for the adult entertainment industry failed, *inter alia*, for want of an avenue for prompt judicial review of an adverse decision.

of the plaintiffs' claim: the Supreme Court handed down its decision in *City of Littleton, Colorado v. Z.J. Gifts,* —— U.S. ——, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004). That opinion resolves the judicial review issue that has split the circuits since 1990 and provides us with new guidance in analyzing the City's ordinance, as developed more fully in the ensuing discussion.

■ The First Amendment is implicated whenever a city requires a bookstore, a newsstand, a theater, or an adult business to obtain a license before it can begin to operate. Until the Supreme Court's recent decision in *City of Littleton, Colorado v. Z.J. Gifts,* an adult business licensing ordinance would be held constitutional under the First Amendment if it provided "prompt judicial review" of an adverse administrative decision. The issue in *City of Littleton* was whether the requirement of "prompt judicial review" imposed by *FW/PBS, Inc. v. Dallas* [7] promised a prompt judicial *decision* or merely prompt *access* to the courts.

A unanimous Supreme Court ruled in *City of Littleton* that the First Amendment requires a prompt judicial decision, not just prompt access to the courts, when a government denies a license for an adult entertainment business. This interpretation gives effect to the "core policy" referred to in *FW/PBS,* namely, that in order to avoid the unconstitutional suppression of protected speech, the government must avoid undue judicial, as well as administrative, delay in rendering decisions on adult entertainment business licenses. *City of Littleton,* —— U.S. at ——, 124 S.Ct. at 2224 (citing *FW/PBS,* 493 U.S. at 228, 110 S.Ct. 596).

The Supreme Court also determined that the City of Littleton's ordinance was consistent with the First Amendment by offering review in the state district court under ordinary state rules of civil procedure. Holding that not only does the First Amendment not require special "adult business" judicial review rules but there is no need for detailed review rules to be written into the ordinance itself, the Court reasoned further that "Colorado's ordinary judicial review rules offer adequate assurance, not only that *access* to the courts can be promptly obtained, but also that a judicial *decision* will be promptly forthcoming." *Id.* The Supreme Court observed that the process of reviewing an adverse licensing decision would likely be straightforward because the reasons for denying a license were few and "purely objective," [8]

7. In *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the Supreme Court held that a municipal licensing scheme that regulates adult bookstore-type businesses in the nature of the plaintiffs's business here, where the materials are Constitutionally protected, is permissible as a prior restraint if there are safeguards adequate to minimize the possibility that the licensing procedures will be used to suppress speech. Among the requirements set out by the Supreme Court for licensing ordinances to pass Constitutional muster are that the regulatory scheme cannot place "unbridled discretion in the hands of a government official or agency." Such unbridled discretion when vested in a government official amounts to unconstitutional censorship or prior restraint upon the exercise of free speech. Oth-

er requirements for ordinances of this nature include limits on the time for a decision by the decision-maker, and the maintenance of the status quo by the applicant until a final licensing decision issues. Finally, the regulatory scheme must provide for "prompt judicial review" in the event that a license is erroneously denied.

8. Three of the seven grounds for denial of an adult entertainment business license in the City of Littleton's ordinance are the same as those in the City of Indianapolis' ordinance: if the applicant provides false information, is not licensed to do business in the State, and has not paid fines, fees or taxes in a timely way. *Cf.* Revised Code, Sec. 807–205 (see infra).

obviating the need for creating a sophisticated or detailed record for judicial review. *Id.* at 2225.

█ The Court's decision in *City of Littleton* paved the way for our conclusion that the City's provision for judicial review by the Marion County Superior Court in Sec. 807–207 satisfies the constitutional standard. Indiana's rules of civil procedure are "ordinary" in the same way the rules of Colorado are, operating to ensure justice, i.e. a prompt judicial decision, "so long as the courts remain sensitive to the need to prevent First Amendment harms and administer those procedures accordingly. And whether the courts do so is a matter normally fit for case-by-case determination rather than a facial challenge." *Id.* at 2225.

In our prior order, we found that Sec. 807–207 of the adult entertainment business ordinance appeared to deny an aggrieved applicant an opportunity for administrative review, i.e. a Controller's hearing and/or appeal to the license review board, although the provision did explicitly provide for judicial review. We held that the ordinance deprived the applicant of meaningful access to judicial review because, without a "quasi-judicial" proceeding such as a hearing, no record would be produced for a trial court to review. If access to judicial review were stymied by lack of an administrative record, so would be a prompt judicial determination. At the time we entered a restraining order against enforcement of the ordinance, the Seventh Circuit was among those circuits interpreting the *FW/PBS* "prompt judicial

review" requirement as one for prompt access to a court rather than a prompt judicial determination. This split among the circuit courts has now been resolved with the Supreme Court ruling that the First Amendment requires a prompt judicial decision when the government denies a license for an adult entertainment business. The key remaining issue before us here is whether the City's ordinance provides for a sufficient written record to allow a reviewing court to make a fair and reasoned decision. Under *City of Littleton*, we find that it does, though doubts remain whether Sec. 807–207 actually guarantees a Controller's hearing.[9]

The revised licensing provision of the adult entertainment business ordinance allows the Controller to deny a license for four (4) objective and easily verifiable reasons: (1) if a license applicant is not a corporation organized by law or authorized and qualified to do business in the state; (2) if the applicant has not fully paid the license fee; (3) if the applicant is delinquent to the city, county or state for financial obligations; and .(4) if the applicant has either failed to provide information or falsified information on its application form. Sec. 807–205. No exercise of discretion in the sense of weighing competing options is required by the Controller in making these determinations. By affidavit, the Controller's office explained the ways in which it gathers the relevant information: (1) the corporate information is verified through the Indiana Secretary of State's records; (2) the payment of the

---

9. The City explains that the language following "shall not be subject to" in Sec. 807–207(a) is not meant to exclude the *right* to a hearing; only the requirement to exhaust administrative remedies. The right to a hearing flows, they contend, from Sec. 801–210. However, that provision merely provides that the aggrieved applicant has the right to *request* a hearing. If the Controller's hearing were necessary to the constitutionality of the ordinance, we believe Chapter 801 in tandem with Chapter 807 do not provide a sufficient guarantee that an aggrieved applicant will receive a hearing before the Controller because the Regulation clearly states the hearing is not mandatory but instead remains within the Controller's discretion.

license fee is recorded by the Controller's office and thus easily verifiable by them; (3) the financial information is obtained from the respective treasurers of the county, city and state; and (4) the veracity of the information on the application is only at issue if the Controller receives evidence that an applicant has provided false information. In the last instance, documentation of such evidence becomes part of the applicant's record. Def.'s Ex. 9, Aff. Adonna White, ¶¶ 5–8.

Under the requirements of the ordinance, should the Controller deny an application for an adult entertainment business license on any one of these grounds, the applicant receives written notice of the denial which states the reason or reasons. *See* Sec. 801–210:

> *Denial of License; notification, refund of fee.*
>
> (a) Whenever an application for a license or renewal of a license is denied, the Controller shall give an applicant or licensee written notice of the denial. The notice shall state the reason or reasons for the denial [ . . . ].

Despite the express exclusion of certain Chapter 801 procedures for judicial review as applied to adult entertainment businesses (*see* Sec. 807–207), there is no other basis to conclude that the general licensing provisions of Chapter 801 are inapplicable to adult entertainment businesses. To the contrary, Chapter 807 expressly incorporates Chapter 801 procedures in detailing the grounds for the suspension or revocation of a license (*see* Sec. 807–206(b)). We conclude that Section 801–210 therefore applies to adult entertainment businesses and thus accept the City's interpretation that an aggrieved applicant shall always receive written notification of the reasons for the denial of a license. Def.'s Reply Br. at 3–4. Accordingly, the application for the license, the letter denying the license with stated reasons for the denial,

and any documentary evidence justifying the adverse decision shall comprise the record on appeal to be compiled and transmitted by the Controller to the Marion Superior Court for judicial review.

The City contends these materials provide an adequate record for judicial review. In light of the Supreme Court's discussion involving exactly this same type of record in *City of Littleton*, we must agree with the City. There, the licensing scheme at issue applied several "reasonably objective, nondiscretionary criteria unrelated to the content" of the expressive materials that an adult business typically sells or displays. Similarly here, an adult business license would be denied if the applicant provided false information, if the corporation were not authorized to do business in the state, or if it had not timely paid taxes, fees, fines, or penalties. The Supreme Court noted that "[t]hese objective criteria are simple enough to apply and their application simple enough to review that their use is unlikely in practice to suppress totally the presence of any specific item of adult material in the Littleton community. [ . . . .] The simple objective nature of the licensing criteria means that in the ordinary case, judicial review, too, should prove simple, hence expeditious." *Id.* at 2225–2226.

We next turn to a consideration of whether the intermediate layer of administrative review in the form of a Controller's hearing, viewed by us as a mandatory procedural safeguard in our earlier ruling, is still required in order for the ordinance to pass constitutional muster. Plaintiffs claim that a license decision must be made in a quasi-judicial proceeding. The City responds, contending that such a requirement finds no support in Indiana law and that an Indiana court can adequately review the Controller's written findings. Def.'s Reply at 6.

■ As a general principle of administrative law, the purpose of a quasi-judicial proceeding by an agency, in this case, the Controller, is to flesh out the pertinent facts upon which a decision is based in order to facilitate judicial review. *See State ex rel. Newton v. Board of School Trustees of Metropolitan School Dist. of Wabash County,* 404 N.E.2d 47 (Ind.App. 1980); *Metropolitan Board of Zoning Appeals of Marion County v. Graves,* 172 Ind.App. 459, 360 N.E.2d 848 (1977). One purpose of this requirement is to prevent "judicial intrusion into matters committed to administrative discretion by the legislature". *Vehslage v. Rose Acre Farms, Inc.* 474 N.E.2d 1029, 1031 (Ind.App.1985).

The need for a Controller's hearing of a license denial is obviated by the fact that the four grounds for denial are objective and ministerial in nature, requiring no exercise of judgment on the part of the government, only and "up or down" decision on each factor. Contrast these grounds for a denial to those for the suspension or revocation, for example:

*Sec. 807–26206. Grounds for suspension or revocation; Controller's hearing.*

(a) A license granted under this article may be suspended or revoked for any reason an application for renewal may be denied under section 807–205 of this Code, or if the licensee:

(1) Conducts the business or maintains the premises in such a manner as to create a nuisance to the public;

(2) Knowingly permits any illegal conduct or practice to take place on the business premises or in the conduct of the business; or

(3) Violates the premises requirements or operational requirements provided in section 807–28301 or section 807–29302 of this Revised Code.

(b) A suspension or revocation of a license under this chapter shall not be made without first holding a Controller's hearing under the procedures provided in Chapter 801, Article IV, Division 2 of this Code.

Obviously, with regard to suspensions and revocations, discretion and judgment are required to determine whether or not an applicant has conducted himself in such a way as to create a public nuisance or whether the applicant has knowingly permitted illegal conduct or practices of any kind to occur on the premises. Therefore, in these matters the City mandates an administrative hearing in order, we assume, to ensure adequate procedural safeguards to avoid wrongfully suppressing a protected activity.

Nothing appears to be gained by a Controller's hearing on the limited objective grounds for denial of a license. The additional layer of administrative review would not be necessary to flesh out the pertinent facts for a reviewing court to rely upon. The ordinance appears to provide a sufficient mechanism for creating a reviewable record without requiring unnecessary administrative steps, contrary to Plaintiffs' argument.

■ An alternate ground for Plaintiffs' motion for summary judgment is that no judicial review can actually be undertaken by the Marion County Superior Court because the Court lacks any jurisdictional grant of power to hear and decide an appeal of a municipality's licensing decision. We do not find a statutory basis for this theory. The State statutes have granted to the Marion Superior Court concurrent and coextensive jurisdiction with the Marion Circuit Court in all cases and upon all subject matters, including civil, criminal, juvenile, probate, and statutory cases and matters, whether original or appellate. Ind.Code § 33–5.1–2–4. The Marion Circuit Court has original jurisdiction in all civil and criminal cases except where exclusive jurisdiction is conferred upon a

different court in the same territorial jurisdiction. It also has "such appellate jurisdiction as may be conferred by law upon it." Ind.Code § 33–4–4–3.

Plaintiffs contend that the appeal of a license denial requires an exercise of appellate jurisdiction which has not been conferred by a specific statute. We do not share that view as to statutory construction and thus are not so persuaded by Plaintiffs' argument. The circuit and superior courts have subject matter jurisdiction because a petition for review of a licensing decision is a civil or statutory issue (in this case, a statutory issue) emanating from the ordinance. Ind.Code § 33–5.1–2–4(1). Moreover, Indiana courts regard themselves empowered to exercise review of adverse licensing decisions based on the general principles of administrative law. *See e.g. Oriental Health Spa v. City of Fort Wayne*, 526 N.E.2d 1019 (Ind.Ct.App.1988) (reviewing the city Controller's denial of a license to a massage parlor for violation of the ordinance).

For these reasons, we declare the judicial review provisions of Section 807–207 to be constitutional. Accordingly, we *DENY* Plaintiffs' Motion for Summary Judgment and *GRANT* Defendant's Motion for Summary Judgment on issues relating to judicial review under the First and Fourteenth Amendments.

*The Secondary Effects Analysis under the First Amendment*

■ The City next moves for summary judgment on Plaintiffs' challenge to the substantive validity of the adult entertainment business ordinance. The First Amendment is implicated whenever the government (here, the City) seeks to single out adult entertainment businesses and regulate them through licensing, operational and zoning laws. Such ordinances are constitutional so long as they are content-neutral regulations of speech which are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). In *Renton*, the Supreme Court addressed a situation in which the City had enacted an adult theater zoning ordinance aimed at preventing the secondary effects caused by the presence of even a single theater in a given neighborhood. *Id.* at 50, 106 S.Ct. 925.

■ An ordinance is properly classified as content neutral if it does not seek to regulate the content of the expression (*e.g.*, ban the sale of adult-oriented materials altogether) but rather imposes limitations only on the location of a business or its hours of operation. Our review of the City's adult entertainment business ordinance causes us to conclude that it is a permissible time, place and manner regulation. Chapter 807 does not ban adult bookstores instead it requires adult entertainment businesses to apply for a license, to meet certain premises requirements and to limit the hours of operation. *See* Sections 807–103, 202, 301, 302.

■ Whether the ordinance serves a substantial governmental interest again is a decision to be made in light of Supreme Court precedent and Seventh Circuit interpretations, and, again we find that the City's ordinance passes constitutional muster. Secondary effects are those harmful side effects allegedly associated with the presence of adult entertainment businesses, such as increased crime, an increase in public sexual acts, the spread of sexually transmitted diseases and declining property values. *See e.g. G.M. Enter., Inc. v. Town of St. Joseph, Wisconsin*, 350 F.3d 631, 633 (2003); *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 829 (7th Cir.1999).

In *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670, (2002), the Supreme Court

affirmed that "reducing crime is a substantial governmental interest." In passing on the validity of a Los Angeles restriction on multiple-use adult entertainment businesses, the Supreme Court required the government to shoulder the burden of producing evidence that the adult-oriented business not only caused the asserted adverse secondary effects but that the proposed regulation was a reasonable measure to reduce those particular effects. *Id.* at 438, 122 S.Ct. 1728. The plurality opinion in *Alameda Books* reasserted the Renton standard: to wit, a municipality may rely on any evidence that is "reasonably believed to be relevant" for demonstrating a connection between speech and a substantial, independent government interest. *Id.* at 438, 122 S.Ct. 1728 (citing *Renton,* 475 U.S. at 51–52, 106 S.Ct. 925. In *Alameda Books,* the Supreme Court upheld the ordinance which relied on a single study. However, the Court cautioned that "[t]his is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton.*" *Id.*

Two recent Seventh Circuit cases address the evidentiary burden of a municipality in enacting a valid content-neutral ordinance. In *R.V.S., L.L.C. v. City of Rockford,* 361 F.3d 402 (7th Cir.2004), the Court of Appeals, in reversing the district court's judgment in favor of Rockford, applied the *Alameda Books* standard and found the government had not carried its evidentiary burden.

Rockford had enacted a special ordinance regulating a very narrow category of adult entertainment—exotic dancing nightclubs—preventing them from operating within 1000 feet of a church, school or other like establishment. The Rockford City Council had not relied on any studies from other towns nor did it conduct any of its own studies regarding adverse secondary effects associated with exotic dancing nightclubs. The ordinance contained no preamble or legislative findings. At a bench trial on RVS's motion for preliminary and permanent injunctions, police data was introduced relating to the number of police calls made to the area where the business was located. The City's evidence was refuted, however, by expert testimony to the effect that relevant studies show no adverse secondary effects to be associated with nude dancing establishments. *Id.* 406–407.

In applying *Renton/Alameda Books,* the Seventh Circuit observed that a critical deficiency of the Ordinance was the utter lack of evidence proffered to support the premise that nude dancing clubs were associated with adverse secondary effects; simply *assuming* such effects exist does not satisfy the evidentiary standard. While the *Alameda Books* standard is admittedly a minimal one, the record in this case was "devoid of evidence;" Rockford had not identified " any studies, judicial opinions, or experience-based testimony that it considered in adopting the Ordinance." *Id.* at 411.

In *G.M. Enterprises v. the Town of St. Joseph, Wisconsin,* 350 F.3d 631, 633 (2003), the Seventh Circuit held that the town had carried its evidentiary burden and affirmed the lower court decision to that effect. The Court addressed the "quality and quantum of evidence" that the government must rely upon in order to demonstrate that its regulation was justified by the need to combat adverse secondary effects of adult entertainment, finding sufficient the following: sixteen studies

from various other communities around the country that demonstrated a correlation between adult entertainment businesses and negative secondary effects; judicial opinions from other jurisdictions that addressed adverse secondary effects associated with adult entertainment businesses; and police reports of calls.[10]

Our case closely resembles *G.M. Enterprises* in terms of quantum and quality of evidence. First, the preamble to the ordinance states that its purpose is "to regulate adult entertainment businesses and related activities, to promote the health, safety, morals, and general welfare of the citizens of Marion County, and to establish reasonable and uniform provisions to prevent the deleterious effects of adult entertainment businesses within Marion County." Sec. 807–101.

Further, the ordinance provides that it is premised on the following findings of adverse secondary effects of adult entertainment businesses on effected communities as presented in hearing(s) and reports made to the City–County Council:

> .... the findings incorporated in the cases of *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986), *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), *City of Newport, Ky. v. Iacobucci,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986), *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), *City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002), *Broadway Books, Inc. v. Roberts,* 642 F.Supp. 486 (E.D.Tenn.1986), *DLS. Inc. v. City of Chattanooga,* 107 F.3d 403 (6th Cir.1997), *Pleasureland Museum, Inc. v. Beutter,* 288 F.3d 988, 2002 WL 818791 (7th Cir.2002), *Kev, Inc. v. Kitsap County,* 793 F.2d 1053 (9th Cir. 1986), *Hang On. Inc. v. City of Arlington,* 65 F.3d 1248 (5th Cir.1995), *South Florida Free Beaches, Inc. v. City of Miami,* 734 F.2d 608 (11th Cir.1984), and *Mitchell et al v. Commission on Adult Entertainment Establishments of the State of Delaware et al.,* 10 F.3d 123 (3rd Cir.1993), *Ellwest Stereo Theater, Inc. v. Boner,* 718 F.Supp. 1553 (M.D.Tenn.1989), *City of Lincoln v. ABC Books, Inc.,* 238 Neb. 378, 470 N.W.2d 760 (1991), *Berg v. Health & Hosp. Corp. of Marion County,* 865 F.2d 797 (7th Cir.1989), *Schultz v. Cumberland,* 228 F.3d 831 (7th Cir.2000), as well as studies conducted in communities including, but not limited to Indianapolis, Indiana; Phoenix, Arizona; Minneapolis, Minnesota; Houston, Texas; Amarillo, Texas; Garden Grove, California; Los Angeles, California; Whittier, California; Austin, Texas; Seattle, Washington; Oklahoma City, Oklahoma; Cleveland, Ohio; and Beaumont, Texas; findings reported in the Final Report of the Attorney General's Commission on Pornography (1986), the Report of the Attorney General's Working Group On the Regulation of Sexually Oriented Businesses (June 6, 1989, State of Minnesota); and statistics of the U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, the city-county council finds:

---

**10.** G.M. Enterprises operated a topless nightclub that served liquor and the sheriff reported that he received more calls regarding this club than other clubs that serve liquor but do not have nude dancers. *G.M.,* 350 F.3d at 634.

(1) Adult entertainment businesses lend themselves to ancillary unlawful and unhealthy activities that are presently insufficiently controlled by the operators of the establishments;

(2) Crime statistics show that all types of crimes, especially sex-related crimes, occur with more frequency in neighborhoods where adult entertainment businesses are located;

(3) Sexual acts. including masturbation, oral sex and anal sex, occur at adult entertainment businesses, especially those which provide booths or cubicles for viewing films, videos, or live sex shows-,

(4) Acts of prostitution commonly occur at adult entertainment businesses;

(5) Persons frequent certain adult theaters and other adult entertainment businesses for the purpose of engaging in sex within the premises;

(6) At least fifty (50) communicable diseases may be spread by activities that occur in adult entertainment businesses, including, but not limited to, syphilis, gonorrhea, human immunodeficiency virus infection (HIVAIDS), genital herpes, hepatitis B. Non A. salmonella infections and shigella infections

(7) In the four (4) years preceding the effective date of this ordinance, the city experienced an outbreak of primary and secondary (infectious) syphilis, yielding the highest and second highest. annual case rates of any city and county in the United States;

(8) Prostitution, sexual assaults and other criminal activity occur at adult entertainment businesses;

(9) Prostitution is connected to the spread of sexually transmitted diseases;

(10) Adult entertainment businesses have operational characteristics which should be reasonably regulated in order to protect those substantial governmental concerns; and.

(11) The general welfare, health, morals and safety of the citizens of the city will be promoted by the enactment of this chapter.

Sec. 807–102.

Plaintiffs have sought to rebut this evidence through the testimony of their expert, Dr. Daniel Linz, who views the studies on which the City relied as based on "shoddy data" and unsound methodology. Moreover, Dr. Linz cites in his finding that the authors themselves often admit that they do not find evidence of adverse secondary effects associated with adult businesses. Def.'s Ex. E, Linz Report, ¶ 4. Dr. Linz instead employed two different types of analysis of crime evidence—hotspot analysis and before/after analysis—and reached the conclusion that Indianapolis adult businesses do not produce crime effects. Def.'s Ex. D, Linz Study. Hotspot analysis focuses on specific addresses within a neighborhood (census block group) in which an adult business is located. Dr. Linz analyzed police call data from January 1, 1998 to December 31, 2003 for the Indianapolis neighborhoods where Plaintiffs' businesses are located, selecting control areas from within the same neighborhoods with similar demographic characteristics known to relate to crime. He found that adult businesses do not contribute significantly[11] to the percentage of overall

11. Dr. Linz appears to have adopted the reasoning of the authors of the Garden Grove, CA study, who "reasoned if the adult business accounted for 10–25 percent of crimes in a neighborhood they constituted a 'significant' source of crime events." Def. Ex. E. According to Dr. Linz's hotspot analysis, Annex Books contributed 6 percent while the other

crime in the given neighborhood. Dr. Linz also compared incidents of criminal activity in the neighborhood before and after an adult entertainment business opened. Pls.' Opp'n Br. at 21. Based on this analysis, Dr. Linz concluded that adult video/bookstore businesses are a very insignificant source of crime within their respective neighborhoods. Def.'s Ex. E; Evaluating the Potential Secondary Effects of Adult Video/Bookstores in Indianapolis; Linz Report.

At our hearing on the TRO, the City introduced evidence of *actual effects* caused by the Plaintiffs' stores. Specifically, the data revealed that the police made forty one (41) arrests at Annex Books for public masturbation between December 5, 2001 and November 5, 2002. Def.'s Br. at 24. In the before/after crime analysis Dr. Linz conducted, we note that he collected police call data for 2001 and 2003, but not for 2002. We need not delve into the intricacies of Dr. Linz's analysis in order to conclude, as we do, that the City has rebutted Plaintiffs' evidence to the contrary on adverse secondary effects. We find the data regarding the number and type of actual arrests at Annex Books for the year period compelling.

As the Seventh Circuit reasoned in *G.M. Enterprises,* "*Alameda Books* does not require a court to re-weigh the evidence considered by a legislative body, nor does it empower a court to substitute its judgment in regards to whether a regulation will best serve a community, so long as the regulatory body has satisfied the *Renton* requirement that it consider evidence 'reasonably believed to be relevant to the problem' addressed." (citing to *Renton,* 475 U.S. at 51–52, 106 S.Ct. 925; *Alameda Books,* 535 U.S. at 445, 122 S.Ct. 1728). *G.M. Enter.* 350 F.3d 631 at 639–640.

Accordingly, we find the City's enactment of this ordinance was premised on sufficient evidence of adverse secondary effects to uphold its validity. The City has demonstrated a reasonable basis for its finding of a causal relationship between the activity regulated and the adverse secondary effects, as required by *Alameda Books* and *Renton.* Thus, regarding the substantive validity of the adult entertainment business ordinance as a time, place and manner regulation, we *GRANT* Defendant's Motion for Summary Judgment.

*Site Visits Analysis under the Fourth Amendment*

█ The City's final contention in defense of the ordinance is that the provision that allows City officials to visit adult bookstores during business hours without notice is constitutional because it does not authorize city officials to conduct unconstitutional warrantless searches, as argued by Plaintiffs. Am. Comp. at 7; Def.s' Br. at 3; Pls.' Br. at 23. Here, we disagree. This portion of the ordinance provides as follows:

**Sec. 807–302.** *Operational requirements.*

(a) It shall be unlawful to own or operate an adult entertainment business that is not in compliance with the requirements stated in this section.

(b) An adult entertainment establishment business shall be kept in a sanitary condition at all times. As a condition of licensure under this chapter, *the Controller or Controller's designee shall have the right to enter any licensed premises at any time during business hours without notice to insure compliance with this chapter, and it shall be unlawful for a person to prevent or deny any such entry.* The Controller shall have the power to determine if such establishment business is in a sani-

plaintiffs ranged between 0–2 percent. *Id.,* Table 4.

tary condition. For such purpose, the Controller shall have, upon demand, the assistance of the administrator of the division of compliance of the department of metropolitan development, and the Health and Hospital Corporation of Marion County. If the Controller shall determine, after investigation by the division of development services or the Health and Hospital Corporation of Marion County, that an unsanitary condition exists within an adult entertainment establishment business, the Controller shall suspend the establishment license for such premises until such unsanitary condition is rectified. (Emphasis supplied).

The stated purpose of the authorized random visits is to assure compliance with the section's requirement to keep the business premises "in a sanitary condition." The City initially argues that the Fourth Amendment is not implicated because a business does not enjoy a reasonable expectation of privacy in the public areas of its facilities during business hours. Def.'s Br. at 32. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (holding a search falls within the Fourth Amendment's protections when the government intrudes into an area where a person has a reasonable and justifiable expectation of privacy). However, the ordinance does not distinguish between the areas of the business which are open to the public and those which are not. Because the Controller has the authority to make the discretionary determination of whether the entire premises is in a "sanitary condition," we see no basis to assume that his visit would necessarily be limited to only retail areas.

The City's reliance on the decision in *Maryland v. Macon* is insufficient. There, the Supreme Court concluded that no Fourth Amendment search occurred when an undercover police detective entered a store and purchased an "adult" magazine, noting specifically that "wares that were intentionally exposed to all who frequent the place of business did not infringe a legitimate expectation of privacy and hence did not constitute a search within the meaning of the Fourth Amendment." 472 U.S. 463, 469, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). Section 807–302 of the Indianapolis ordinance is not limited to the magazine rack or even to inventory that is publicly displayed. The City argues that the ordinance "does not purport to give any public officer greater access to the store than that available to the public." Def. Br. at 32. While it is true that authorized visits can occur only during the hours the business is open to the public, the ordinance is silent in terms of the areas subject to such a visit. It would not be farfetched for an official checking for sanitary conditions to stray beyond the magazine racks into areas in which the business owner has a legitimate expectation of privacy.

 The provision in the ordinance authorizes searches which do not require consent or a warrant, which gives rise to our second constitutional concern. We are not persuaded that the ordinance's authorization falls within the general exception to the warrant requirement for administrative inspection searches. The general rule requires a government inspector who performs an administrative search, such as a municipal health and safety inspector, to have a warrant to search a commercial building. *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). An exception to this warrant requirement has been made in highly regulated industries, that is, industries which have a history of substantial governmental oversight, such as the liquor, firearms and coal mining industries,[12] but only if the

12. *See Marshall v. Barlow's Inc.*, 436 U.S. · 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).,

following conditions are met: (1) there is a substantial governmental interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the warrantless inspection is necessary to further the regulatory scheme; and (3) the statute's inspection program, in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant. *New York v. Burger,* 482 U.S. 691, 703, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).

The City's motion for summary judgment on the inspection provision rests solely on its argument that the adult entertainment businesses have no reasonable expectation of privacy in their business premises. We do not find that argument persuasive. Warrantless administrative searches of adult entertainment businesses have not been justified or validated by a finding that these are "highly-regulated" enterprises. Without specifically deciding whether the *Burger* conditions are met, we find that the City has not, as a matter of law, established that the inspection provision in the ordinance is not subject to Fourth Amendment protections. Accordingly, we declare Section 807–302(b) to be constitutionally invalid and *DENY* Defendant's Motion for Summary Judgment on Fourth Amendment grounds.

### Severability

The City urges the Court to sever any part of the ordinance it finds invalid so to avoid a ruling invalidating the whole. As explained above, we have found only the inspection provision, Sec. 807–302(b), constitutionally deficient. Under the severability clause in Sec. 807–401, the invalid provision is to be deemed a "separate, distinct and independent provision," saving the remainder of the ordinance for enforcement. In ruling on such a request, we consider the standard in the Seventh Circuit, to wit, to give effect to "a robust severability clause," preserving the vali-

dated elements so long as the invalidated parts are not "an integral part of the statutory enactment viewed in its entirety." *See Schultz v. City of Cumberland,* 228 F.3d 831, 853 –854 (7th Cir.2000) (citing *Zbaraz v. Hartigan,* 763 F.2d 1532, 1545 (7th Cir.1985)); *see also Pleasureland Museum, Inc. v. Beutter,* 288 F.3d 988, 1005 (7th Cir.2002) (enjoining only the sections found unconstitutional and permitting the operation of the sections that either upheld or unchallenged). We find that with regard to this ordinance the inspection provision can and should be severed. The judicial review provision, along with the licensing and premises requirements, operate independently from the inspection provision and as such are not affected by our invalidation of Sec. 807–302(b).

### Conclusion

In summary, for the reasons stated above, we *DENY* Plaintiffs' Motion for Summary Judgment and *GRANT* Defendant's Motion for Summary Judgment on the first and second grounds (judicial review, licensure and premises requirements) and *DENY* the motion on the third ground relating to the unconstitutionality of warrantless inspections.